State v. Soper.

---

THE STATE v. SOPER, Appellant.

Division Two, February 21, 1899.

1. Indictment: RETURNED ON LEGAL HOLIDAY. An indictment returned on a legal holiday is valid.

2. Juror: CHALLENGED FOR CAUSE. A challenge for cause must specify the ground therefor.

148 217
f152 71
148 217
156 230
156 331
148 217
157 365
148 217
172 15653
148 217
e179 6111

3. **Evidence**: LETTERS: IN DEFENDANT'S HANDWRITING, WHEN ADMISSIBLE. Letters confessing the perpetration of the murder of defendant's wife and children, found on a stand in his house, near their bodies, after the homicide, and dated on the day of the homicide, where written on defendant's letter heads, and signed with his name, and spattered with blood, and where defendant immediately fled from the State, are admissible, without proof of defendant's handwriting.

4. **Insanity**: EVIDENCE OF. Evidence of a witness who had seen defendant only three times before the homicide, and who had no acquaintance with him, as to his conduct a short time before the homicide, was properly excluded, especially where his testimony, as elicited, showed no relevancy as to defendant's insanity.

5. ———: ———: HEREDITARY. Defendant's insanity can not be shown by evidence of insanity in his collateral kindred, from whom he is not descended.

6. ———: PHYSICIAN: OPINION BASED ON DEFENDANT'S STATEMENTS. A physician can not give his opinion of defendant's sanity, based on previous statements made to him by defendant concerning his previous personal history.

7. **Witness**: MAY BE RECALLED FOR CROSS-EXAMINATION. Permission to recall and further cross-examine expert witnesses is within the discretion of the trial court.

8. ———: EXTENT OF CROSS-EXAMINATION. A witness examined in chief, though only on trival matters, may be cross-examined as to the whole cause.

9. **Insanity**: OPINION OF WITNESS. A witness may testify that a person is sane, without giving his reasons for his opinion.

10. **Practice**: READING SCIENTIFIC BOOKS TO JURY. It is within the court's discretion to refuse to permit counsel to read to the jury the writings of eminent physicians on insanity.

11. **Insane Impulse.** The doctrine of "insane or uncontrollable impulse" is not indorsed in Missouri.

12. **Murder**: HUSBAND OF WIFE: NO DOUBLE PRESUMPTION OF INNOCENCE. There is no additional presumption of innocence in the case of a husband charged with the murder of his wife, because of the marital relations.

13. ———: INSANITY: INSTRUCTIONS. In a prosecution for murder, where defendant's insanity was the only issue, it was proper to refuse to charge that, if there was a single fact constituting an element of defendant's guilt which the State has failed to prove beyond a reasonable doubt, it is sufficient to raise a reasonable doubt.

State v. Soper.

14. ——: ——: ——: CIRCUMSTANTIAL EVIDENCE. A charge on circumstantial evidence is properly refused, where the only issue is as to defendant's insanity, and the evidence in regard thereto is open, direct and oral.

15. Juror: EXPRESSING OPINION: AFFIDAVIT. A decision of the trial court, that a juror had not expressed an opinion before he was impaneled, will not be disturbed, where based on the juror's affidavit as against the affidavit of one other person.

16. New Trial: CUMULATIVE EVIDENCE NO GROUND. Newly discovered evidence which is cumulative is no ground for a new trial.

17. ——: AFFIDAVIT. A motion for a new trial must be accompanied by defendant's affidavit, unless a valid excuse is given.

18. ——: ——: BY ATTORNEY. An affidavit of defendant's counsel, that they had not relied on defendant to furnish the facts or to show the condition of his mind, in reliance on the opinion of medical experts as to his mental condition, is insufficient to excuse the filing of an affidavit by defendant on a motion for a new trial, where it is not further alleged that defendant was insane, or that the medical experts believed him to be insane, or that the affiants believed him insane.

*Appeal from Cass Circuit Court.*—Hon. W. W. Wood, Judge.

AFFIRMED.

CHAS. W. SLOAN, JAMES T. BURNEY and T. N. HAYNES for appellant.

(1) The indictment having been returned by the grand jury on a legal holiday was not sufficient to base a charge on against the defendant. (2) More than half of the panel of forty jurors had formed and expressed opinions as to defendant's guilt, and so stated on their examination. The jury was not fair and impartial. (3) The court erred in admitting the letters in evidence. These letters were not properly identified and proven to have been written by the defendant. 1 Greenl. on Ev., sec. 576; State v. Brown, 70 Am. Dec. 168; State v. Clinton, 67 Mo. 380. (4) The

court erred in rejecting the testimony of McDonald in regard to defendant's conduct a short time prior to the homicide. Clark v. Sawyer, 3 Sandf. Ch. 351; Burkhart v. Gladish, 123 Ind. 338; State v. Williamson, 106 Mo. 162. (5) It was error to reject the evidence of witnesses in regard to the insanity of their relatives. It is proper to prove insanity of deceased relatives from reputation in the family. 1 Rice on Ev., p. 415; 1 Greenl. on Ev., sec. 102; 2 Bishop on Crim. Proc., sec. 686; Gaines v. New Orleans, 6 Wall. 642; Reed v. State, 16 Ark. 499. (6) It was error to refuse to allow physicians to testify in regard to their examinations of defendant. Physicians, giving their opinions as to the sanity or insanity of defendant based on their personal examination of him, have the same right to give the grounds of their belief, including the patient's acts, conversation and conduct, as other witnesses have. Railroad v. Falvey, 104 Ind. 409; Railroad v. Newell, 54 Am. Rep. 312; Barber v. Merriam, 11 Allen, 322; Brown v.Railroad, 32 N. Y. 597; Quaife v. Railroad, 48 Wis. 513; Eckles v. Bates, 26 Ala. 655; State v. Gedicke, 43 N. J. L. 86; Railroad v. Sutton, 42 Ill. 438. (7) It was error for the State to recall witnesses for defendant for cross-examination, upon the question of insanity, who had not been examined by defendant on that subject. Rheinfeldt v. Dahlman, 19 N. Y. 162; State v. Thalheim, 38 Fla. 169; Houghton v. Jones, 68 U. S. 702; Donnelly v. State, 26 N. J. L. 463; Rice on Crim. Ev., p. 332. (8) (a) The court erred in permitting witnesses to give their opinions of the sanity of defendant without stating any facts upon which to base their opinions. State v. Klinger, 46 Mo. 224; State v. Erb, 74 Mo. 199; State v. Crisp, 126 Mo. 609; State v. Shaefer, 56 Mo. App. 501; Buswell on Insanity, secs. 240-243; 2 Bish, Crim. Proc., secs. 678-680. (b) Nonexpert witnesses for the State, as well as for the defendant must first testify to the facts upon which they base an opinion as to defendant's sanity before

giving the opinion. Williams v. State, 39 S. W. Rep. 687; Hurst v. State, 40 S. W. Rep. 264. (9) It was error for the court to refuse counsel the right to read as a part of the argument to the jury the writings of eminent physicians on the subject of insanity. The writers were proven to be standard authority on the subject under discussion. Ins. Co. v. Cheever, 36 Ohio St. 201; 24 Albany Law Journal, p. 266; Merkle v. State, 37 Ala. 139. (10) (a) The court committed error in refusing instruction numbered 18, asked by defendant. State v. Baldwin, 12 Mo. 223; State v. Lowe, 93 Mo. 547; State v. Duestrow, 137 Mo. 44; Dacy v. People, 116 Ill. 555; Bishop, Crim. Law, secs. 383b and 387. (b) Defendant, being charged with the murder of his wife, was entitled to his instruction numbered 19 asked, embodying the additional presumption of innocence by reason of such marital relations. State v. Moxley, 102 Mo. 374; State v. Leabo, 84 Mo. 168; State v. Watkins, 9 Conn. 47; State v. Green, 35 Conn. 205. (c) Instruction numbered 23 was erroneously refused by the court, and no instruction covering the law therein declared was given by the court. State v. Moxley, 102 Mo. 388. (d) The court committed error in refusing instruction numbered 20, asked by defendant. Spies v. People, 12 N. E. Rep. 865. (11) (a) The motion for new trial should have been sustained on the ground of newly discovered evidence. The affidavits disclose newly discovered evidence which is not cumulative. State v. Murray, 91 Mo. 103; State v. Bailey, 94 Mo. 315; State v. Moberly, 121 Mo. 604; Longdon v. Kelly, 51 Mo. App. 572; 16 Am. and Eng. Ency. of Law, 575; State v. Bailey, 94 Mo. 315; Howland v. Reeves, 25 Mo. App. 466. (b) The newly discovered evidence, being a new kind of evidence tending to prove the insanity of the defendant at the time of the killing is material and relevant. Howland v. Reeves, 25 Mo. App. 466. (c) A sufficient reason appears why defendant did not and could not make affidavit in support of

new trial and that his attorneys might make such affidavit. State v. McLaughlin, 27 Mo. 111; State v. Nagel, 136 Mo. 50. (d) If it be doubtful how the newly discovered evidence would affect the result, the motion for new trial should be sustained. State v. Bailey, 94 Mo. 316.

EDWARD C. CROW, Attorney-General, and SAM B. JEFFRIES, Assistant Attorney-General, for the State.

(1) Defendant, in his motion for arrest of judgment leveled an objection against the legality of the indictment on the ground that it was returned by a grand jury that was organized and impaneled on a day designated by law as a legal holiday. The objection is of no force. The law creating public holidays does not prohibit courts from transacting judicial business on such days, as such statutes and proclamations are considered as mere recommendations that no labor be done or business transacted thereon. Pierson v. Richardson, 1 Cliff. 386. (2) Defendant in the motion for a new trial alleges that error was committed by the trial court in overruling his challenges for cause of certain jurors. The record fails to disclose an objection to the competency of these men, or any one of them as jurors in the case. Such objection must be made before trial commences, else defendant's lips will be closed to any error that may be committed. (3). The mere fact that jurors have read newspaper accounts of the commission of a crime and have formed opinions from such reading, which readily yield to the evidence in the case, does not disqualify them as jurors. State v. Hunt, 141 Mo. 630; State v. Duffy, 124 Mo. 1; State v. Williamson, 106 Mo. 162; State v. Bryant, 93 Mo. 273. (4) No error was committed by admitting in evidence the letters written by defendant. The evidence was not only sufficient to show that they were written by him, but shows an admission upon his part that he did write them. There was also evidence introduced to the effect that the letters

were written on "bill-heads" belonging to defendant, and they were found in his dwelling-house; in other words, practically in his possession, all of which are circumstances which point to the fact and tend to prove that they were instruments of his own writing. This evidence was certainly sufficient to create the presumption that they were the act of the defendant and in the absence of proof to the contrary the presumption becomes conclusive against him. And the evidence of W. M. Hodges is, we think, sufficient to justify their admission. No objection was made by defendant's attorneys upon their introduction, and without having made such objection his right to object will be considered as waived. Kloes v. Wurmser, 34 Mo. App. 453; Publishing Co. v. Emerson, 64 Mo. App. 662. (5) While a non-expert may relate facts indicating insanity without giving an opinion himself as to defendant's mental condition, yet such facts must be of such character as tend to show either sanity or insanity, as the case may be, and before a witness will be permitted to give opinion as to whether or not the defendant was sane or insane he must qualify himself by stating to the jury such facts as will enable the jury to know or to determine whether or not he had sufficient acquaintance with the defendant and was in such position as would enable him to properly judge from the actions, conduct and general demeanor of the defendant as to whether he was sane or insane. In the case of the testimony of the witness McDonald, it was shown that he was not acquainted with defendant, having never seen him before. He was in no condition to state sufficient facts upon which to base a finding or opinion of any kind, and the facts stated by him were of the ordinary kind pertaining to single transactions between strangers. If the witness, by reason of his testimony, disqualifies himself by stating that he was not well acquainted with the defendant, and by showing that he was not in a position to give facts that would warrant an opinion from him, no error

can be committed by or imputed to the trial court in exclud-
ing his testimony. State v. Klinger, 46 Mo. 224; Appleby
v. Brock, 76 Mo. 314; Moore v. Moore, 67 Mo. 192. (6) An
attempt was made by defendant to show by his mother,
Mrs. Sarah Soper, that one Mrs. Nannie Messick, a cousin
to defendant's father, who formerly lived at Liberty, Mis-
souri, and who at the time of this trial lived in Kentucky,
and with whom the witness was acquainted, was at one time
an inmate of an insane asylum. This question was objected
to by the State and sustained and her answer stricken out.
Such testimony is restricted to the declarations of deceased
persons who were related by blood or marriage and who are
known to be dead. We submit that so long as the person
charged with being an inmate of an asylum at some previous
time, is living, hearsay evidence and general belief, in fact,
the rumors among her relatives, is not admissible in support
of proof thereof. Doe v. Griffin, 15 East. 293. It has
been said upon good authority that the general reputation
of being insane is not admissible. 2 Bishop's Crim. Proc.,
sec. 687; State v. Brinkly, 58 Ga. 296; State v. Choice, 31
Ga. 424. (7) Error is charged upon the part of the trial
court in refusing to allow physicians Abraham, Warden and
Triplett to give an opinion on defendant's sanity based upon
or taking into consideration the statement made by him con-
cerning his previous history. Upon the hypothetical ques-
tion propounded to the physicians they were asked in addi-
tion to the facts testified to by other witnesses in the case,
to include in their opinions upon the question of defendant's
sanity, the examination that they made of him outside of
the courtroom, including the previous history of his life,
as narrated to them by defendant himself. We submit this
proposition to the court that an expert witness testifying to
the sanity or insanity of the defendant can do so only upon
such testimony as may be deemed to have been proved by
evidence before the jury, or upon a physical examination

made by him of defendant outside of the courtroom. He will not be allowed to give an opinion as to his sanity or insanity based upon and having for its foundation facts told to him by persons outside of the courtroom. Then, clearly he could not base his opinion upon the past history and conduct of the defendant as told him by defendant himself. Railroad v. Falvey, 104 Mo. 409. The opinion of an expert must be based upon facts and not upon information, and unless the facts are shown or deemed to be proved, an opinion will not be allowed to be expressed. A physician can not be permitted to decide upon the credibility of witnesses, nor to take into consideration facts known to him and not communicated to the jury. Koenig v. Globe Mutual Ass'n, 10 Hun. 558; Hunt v. Lowell Gas Light Co., 8 Allen, 169; Van Zandt v. Ins. Co., 55 N. Y. 169; Bush v. Jackson, 24 Ala. 273; Bennett v. Fail, 26 Ala. 605; Burns v. Barrenfield, 84 Ind. 43; Railroad v. Falvey, 104 Ind. 409; Van Deusen v. Newcomer, 40 Mich. 120; Rogers on Expert Test., sec. 36; Wetherby v. Wetherby, 38 Vt. 454; Hudd v. Thing, 45 Me. 392. (8) Error is imputed to the action of the trial court in permitting the State to recall defendant's witnesses for further cross-examination on the question of insanity when they had not been examined by defendant on that subject. The court acted within the scope of its authority and acted wisely in its ruling so as to get all the facts properly before the jury. The State is not bound in the first instance to introduce evidence to prove the sanity of the accused. State v. Crawford, 11 Kan. 42. Whenever a witness is introduced and examined in a case he may be cross-examined as to all matters in the case, no matter how formal and unimportant the examination in chief may have been. State v. Brady, 87 Mo. 142; State v. Sayers, 58 Mo. 585; 1 Greenl. on Ev., sec. 447; State v. Jones, 64 Mo. 397. It has been accepted as the rule to be followed in this

State that the manner of the examination and the order of the witnesses is a matter resting within the discretion of the trial judge, and his actions will never be criticised or held erroneous, unless it appears that the discretion has been grossly abused.   (9)   It is insisted upon by defendant that the trial court erred in permitting certain witnesses to give their opinions as to the sanity of the defendant without stating facts upon which to base their opinions.   They had properly qualified themselves to express an opinion.   Sanity or insanity, from the nature of the case, must be shown by other than direct evidence, and therefore, it is only necessary to show that the witness had an opportunity to observe as to defendant's demeanor, or manner of living in order to enable him to venture an opinion.   State v. Baldwin, 12 Mo. 223.   The evidence here shows that the several witnesses were qualified to express an opinion; their statements of facts were sufficient to give the jury an understanding of that upon which the opinions were based.   This evidence is admissible.   State v. Choice, 31 Ga. 424; Wood v. State, 58 Miss. 741.   (10)   In his argument to the jury the defendant's attorney asked leave of the court to read from the works of an eminent physician upon the subject of insanity. This the trial court refused to do, and defendant alleges the action of the trial court to be error.   Jurors are to be guided as to the law applicable to the case on trial, by what the trial judge presents them in the instructions, and not by what an attorney may read to them from some law book or work upon the subject being considered.   The law makes it the duty of the judge to fully instruct the jury upon all questions of law applicable to the evidence in the case and when such instructions are given, all the law that is necessary for the guidance and direction of the jury is before them, and to permit attorneys to read the law from books, would, in result, be nothing more than presenting a series of instructions which become both voluminous and

burdensome, and which have been frequently condemned and criticized. Scott v. Scott, 124 Ind. 66; State v. Cline, 51 Ark. 140; Good v. Mylin, 13 Pa. St. 538. It is true that the right of an attorney to read from books is an unsettled proposition in criminal cases as decided by the Supreme Courts of most of the states of this country, yet, in Missouri it has been held to be a matter of discretion with the trial judge. State v. Klinger, 46 Mo. 224; State v. Mahly, 68 Mo. 315. (11) Exceptions are taken to the instructions given by the court and also to the refusal of the court to give instructions asked by the defendant. A reading of the instructions found in another part of this brief will show that they are such as have been time and again approved by the court and such as meet the evidence in this case in all its phases. In fact, they are exceedingly fair and partial toward the defendant. In support of the instructions given and of the action of the court in refusing those offered by defendant, we cite the following authorities. State v. Huting, 21 Mo. 464; State v. McCoy, 34 Mo. 531; State v. Smith, 53 Mo. 267; State v. Hundley, 46 Mo. 414; State v. Simms, 68 Mo. 305; State v. Redemeier, 71 Mo. 173; State v. Hunt, 141 Mo. 627. The fact that defendant obeyed an uncontrollable impulse is not sufficient excuse to justify the commission of the act under the plea of insanity. State v. Pagels, 92 Mo. 300. (12) It will be observed that the affidavits of witnesses, upon whose testimony the new trial is asked, disclose the fact that the evidence there sought is of a cumulative character only and that it would in no wise change the result of the case. In such cases the trial court commits no error in overruling the motion. State v. Woodward, 95 Mo. 129; State v. Murray, 91 Mo. 95; State v. Nagel, 136 Mo. 50; State v. Campbell, 115 Mo. 393; State v. Potter, 108 Mo. 424. Not only does it appear that this evidence would be cumulative, but that it was at all times of

easy access and could have been, by diligent inquiry, readily obtained.

SHERWOOD, J.—Defendant was indicted and convicted of murder in the first·degree for killing his wife, Delia Soper, on the night of the twenty-first day of April, 1891.   He lived in the village of Archie, Cass county, Missouri, with his wife and two children, where he was engaged in the business of a "butcher," modernly designated as a "meat market."   He sold out his business a few days before the tragedy, and had arranged to move his family to Adrian, where he intended to engage in the dairy business.   His family relations had always been pleasant and agreeable, in fact, he had the reputation of always being exceedingly kind and affectionate to his wife and two children, a boy and girl, aged three and six, respectively, being looked upon by all who knew him as a model husband.   He was frequently seen with his family, and was apparently devoted to them. While not a member of any church, he was a regular attendant at the Christian church with his wife, of which she was a member.   After he had disposed of his business at Archie he made trips to different places, and made numerous inquiries with a view of finding a good location to engage in some business.   On the evening of the tragedy he went home, but did not retire. About 11 o'clock, after his family had gone to sleep, he procured an ax, went to the bedside of his wife and little son and killed them by striking them on the head; he struck his wife three blows and the little boy·one lick.   After he had made sure of his deadly work at this bedside, he passed into an adjoining room, where the little six-year-old daughter was sleeping, and dealt her two death blows in the same manner and by the same means. After having murdered his family he stood the ax against the wall in the room and near the bed of his dead wife and son. He then went to the kitchen and washed his hands in a pan of water,

which he left sitting on the stove.    From there he returned
to the room where he had killed his wife, drew a stand table
on which was found a Bible, lamp and some writing material,
near the bedside of his dead wife, and wrote two letters,
one to the editor of the Kansas City Times and one to
M. W. Hodges, a resident of Archie, which he sealed and
left on the stand.    The letters were as follows:

"Archie, Mo., 4—21—'91.

"M. W. Hodges.   You will find inclosed with this a
letter for the K. C. Times.   Please send it to them, as I
wish it published.

"My family relations have always been of the most
pleasant kind.   Give my wife and babies a decent burial,
and sell what I have to pay the expenses.

"Yours truly,

"E. B. SOPER."

"P .S.   You will find the key to this house above the
door, outside.   Also, collect what is due me from parties
here.   You will find it all on my book here.

"E. B. S."

"Archie, Mo., 4—21—'91.

"Editor K. C. Times:

"Is life worth living?

"Eight years ago I was released from the penitentiary.
Since then my life has been a failure.   For four years I
tried to live in my native county, but continually met with
reminders of my disgrace, sometimes one way and then
another.   I went to Arkansas, hoping to feel better, but the
trouble of my disgrace followed me and has been a burden
to me all the time.   No matter how well any one tries to
live after being in the pen, if he has a sensible nature, there
is always someone or something to remind him of his dis-
grace and make life miserable.   But I might have borne this,
if it had not been for another trouble.   Since I came to

Archie I have attended church some, and have been studying about my spiritual welfare.

> "There is a time, we know not when;
> A place we know not where;
> That marks the destiny of man
> To glory or dispair."

"In other words, man reaches a point beyond which there is no redemption. He can not repent if he would. This is my condition. Tell me then, is life worth living? It was only a question of time when I should leave my family forever and ever. I do not care to live any longer, and rather than leave them in this sinful world, I'd rather take their lives. I believe I am merciful, for I don't want them to suffer as I have.

"I am going from here to Clay county to kill a devil that has been mainly the cause of all my trouble. Then I shall end my miserable existence. Before this reaches you my spirit will be wandering beyond the shores of time, across the dark Jordan of death; and now with a bruised and bleeding heart I bid farewell to all that is near and dear. My friends, weep not for me. Endeavor to so live that you may escape the punishment that has been my lot. Farewell.                         E. B. SOPER."

After writing these letters he opened the Bible and read until five o'clock the next morning, when he shut up the house, locked it, went to the railroad depot, bought a ticket to Kansas City, and left on the early morning train that passed through Archie about that time. He was seen on the train, and said he was going to Kansas City to attend to some business. He remained in Kansas City about thirty minutes, when he boarded another train, and went to Portland, Oregon. The dead bodies of defendant's wife and children were not discovered until three days after the commission of the crime. Defendant remained in Oregon from the time he went there in April, 1891, until June, 1897,

when arrested and brought back to this State.   He had assumed the name of Homer Lee and had become the owner of a fruit farm near Ashland.   M. W. Hodges, to whom he had written the letter already quoted, went to see him after he had been brought back and of that visit Hodges gives this account:   "I saw Mr. Soper sometime after he was brought back from Oregon; I asked him what time the trouble happened down there; I didn't ask him if he killed his folks; he said about 11 o'clock.   I asked him, I says, you never went to bed that night; he says, no I didn't; I says, the letters you wrote to me and the Kansas City Times, you wrote them after the trouble, didn't you? he says, yes sir; I says, I thought you did, I saw some blood stains on them. I asked him, I says, you didn't go to bed? He says, no I sat up and read; I asked him what was the reason he didn't go and kill that devil up in Clay county that had caused all that trouble, that he mentioned in the letter; he said he was afraid he wouldn't have time; he says, I only stopped half hour at Kansas City, about a half hour; says, I went from there to Omaha and from Omaha—I don't know whether he said he went to Tacoma or not; anyhow he went from here to Portland; at Portland, I think, he said he stayed four days; then he hired out on a ranch at Portland; said he worked on that ranch pretty near two years, then he went back to Portland, and stayed in Portland four years, then he went down, I believe he said to Ashland, and was there nearly two months."

It was also in evidence that defendant told witness H. N. Love, that he never formed the intention of murdering his family until the evening of its occurrence; that he took off his wife's ring after he had killed her, found it too large for his little finger and so he took it out to Oregon with him and had it so altered that he could wear it (giving the jeweler's name who altered it) and that he afterwards wore that ring.

The plea of insanity was interposed as a defense; evidence was introduced for the purpose of showing that defendant's grandmother, on his mother's side, was of unsound mind during the last four years of her life and tried on several occasions to kill herself, etc., etc. Physicians J. L. Warden, J. S. Triplett and I. M. Abraham were introduced to prove that defendant, by reason of his family connections and previous life, was predisposed to insanity, and, at the time of the act was insane. They testified from their examination of defendant and the hypothetical questions put to them while on the witness stand that defendant was affected with that form of insanity known as paranoia, complicated with religious delusions, or delusions of a religious character. There was also much more testimony both expert and otherwise, of a contrary effect to that introduced on behalf of defendant, showing that the latter was as sane as any one, and supporting the testimony of Hodges and others as to incriminatory admissions of defendant as to the perpetration of the crime, and referring to, and thus identifying, the letters he had written and left on the stand.

If the defendant was sane when the homicide occurred, he was guilty of a crime startling in its atrocity. The wife of his bosom, the mother of his little children and soon to become the mother of another, was, while sleeping in her bed, cruelly slain with an ax; then in quick succession his murderous blows fell on his little boy as he lay sleeping beside his mother, and then on his little daughter asleep also in her bed in an adjoining room. After this was done defendant went into the kitchen, washed his bloody hands, and then calmly sat down to write the letters heretofore set forth in evidence; and sat up and read till early train time, locked the door and departed with all expedition and without delay for Oregon, where he changed his name, acquired property, and successfully eluded pursuit for over six years.

The jury have found the issue joined between the State and defendant, adversely to the latter. The counsel appointed by the court to conduct the defense, have with commendable zeal suggested many errors as sufficient to authorize a reversal of the judgment.

1. The indictment was not invalidated by reason of having been returned on a legal holiday. [1 Bishop, New Crim. Proc., sec. 1001. and cases cited.] This is the invariable rule unless the statute in terms forbids. [Ib.]

2. Counsel assert that "more than half the panel of jurors had formed and expressed an opinion as to defendant's guilt, and so stated in their examination." And their first ground in the motion for a new trial states that "the court committed error in overruling defendant's challenge for cause of jurors J. H. Moffat, J. L. Prigmore, S. C. Hinote and W. W. Morlan." These assertions thus made have compelled an examination of the record covering many pages, with the result that it does not disclose a single challenge made nor a single exception saved as to any juror. It really seems that counsel who tried this cause in the court below, and now represent defendant here, might have spared this court such wholly unnecessary and useless labor. And if challenges "for cause," had been made as to any jurors, such challenges would have amounted to nothing, because of not specifying the cause. [State v. Taylor, 134 Mo. loc. cit. 142, and cases cited.]

3. There was no error in admitting the letters already referred to as letters of defendant. Circumstances heretofore detailed leave no doubt on the mind that defendant was conversant with the contents of those letters, and those letters are a virtual admission, indeed, almost an admission in terms, that defendant slew his wife and children on the night those letters bore date. In addition to that, they were signed with his name, written on his letter heads, and were found at the scene of the tragedy, spattered with the blood

of the innocent victims.    In such circumstances, to require proof of defendant's handwriting before reading the letters in evidence would be to disregard and fly in the face of the most obvious and reasonable inferences drawn from closely surrounding facts.

4.    The refusal to admit the testimony of McDonald touching the conduct of defendant a short time before the homicide, was entirely proper.    He had only seen defendant three times, and had no acquaintance with him, and the testimony of McDonald as elicited showed no relevancy to the subject under discussion, to wit, the insanity of defendant, and therefore further testimony of like sort could serve no useful purpose.

5.    A portion of Mrs. Soper's testimony was admitted and a portion rejected.    That thus rejected was inadmissible because it related to the collateral kindred of defendant, and did not show that defendant was descended from that blood which bore the taint of insanity; and consequently such testimony was, of course, irrelevant to the issue joined, to wit, *insanus vel non.*    [State v. Pagels, 92 Mo. loc. cit. 307, 308.]    This view of the subject renders unnecessary any investigation into questions of pedigree, declarations of relatives, reputation in the family, etc.

6.    Counsel charge that error occurred in the court's refusal to admit Abraham, Warden and Triplett, physicians, to give opinions touching defendant's sanity based on statements made by him concerning his previous personal history. His statements in such case are hearsay and furnish no ground whereon to build an expert opinion in regard to his sanity.    This point needs no further discussion as it is abundantly settled by authority.    An expert can not be allowed to give an opinion based upon statements made to him by parties out of court and not under oath.    [Van Deusen v. Newcomer, 40 Mich. 90; 2 Bishop, New Crim. Proc., sec. 683, and cases cited; 1 Ib., sec. 1179, and cases

cited; Whart. Crim. Ev. (9 Ed.), sec. 418, and cases cited; Hurst v. Railroad, 49 Iowa 76.]

His opinion to be admissible must be founded either on his own personal knowledge of the facts, upon facts testified to in court, or else upon a hypothetical question. [Rogers Exp. Test., secs. 36 and 46; Railroad v. Huntley, 38 Mich. 537.] This point, therefore, must be ruled against defendant.

7. It was entirely within the discretion of the trial court whether to grant or refuse permission to the State to recall and further cross-examine certain witnesses of defendant who had testified on the subject of insanity. [State v. Smith, 80 Mo. 516; St. Louis v. Foster, 52 Mo. loc. cit. 517.] And whenever a witness who has been introduced and is examined in chief in a cause, even on the most trivial and unimportant matters, he may be cross-examined upon the whole cause. [State v. Brady, 87 Mo. 142; State v. Sayers, 58 Mo. 585; 1 Greenl., Ev., sec. 447.] This rule is well established in this State.

8. It is urged on behalf of defendant that in permitting witnesses Maude Hewitt and others to give their opinions respecting the sanity of defendant without stating the facts upon which they based their opinions, the trial court erred. Ordinarily, a lay witness is required, when giving an opinion that such a person is of unsound mind, to give the facts on which he founds that opinion. Not so, however, when he gives expression to an opinion that such person is sane, for in that case the subject of the testimony would not give manifestations of certain eccentricities which usually mark the conduct of mind diseased. [Ford v. State, 71 Ala. 385; 3 Rice, Ev., sec. 21.]

9. It belongs to the court to give the law applicable to the jury, whether that bears on the science of medical jurisprudence or not. Therefore the court was entirely right in refusing to let counsel for defendant read as a part of their

argument to the jury the writings of eminent physicians. The court had it within its discretion to grant such permission; it could not be demanded as a matter of right. [State v. Klinger, 46 Mo. 224; State v. Mahly, 68 Mo. 315.] And in concluding this paragraph, I can not refrain from saying, what many others in similar positions have said, that courts, as the years go by, place a lessening reliance on the value of expert testimony in relation to the subject of insanity. Indeed, on this bench for a long period of years we have had murder cases coming up from the largest city of this State, and wherever and whenever a distinguished expert and author on insanity was called on the witness stand, he invariably made out the defendant to be insane.

10.    Error is charged to have occurred in the refusal of the trial court to give instruction 18 asked on the part of defendant. It is the following: "On the question of sanity or insanity of the defendant, you will consider all the evidence offered in the case; the life, habits and conduct of the defendant from his infancy to the present time, so far as the same are shown in evidence; the habits, conduct and mental condition of his ancestors; the homicide itself and the circumstances attending it; the absence or presence of any motive for the conduct of defendant as shown by the evidence and all the testimony bearing upon the question of his sanity. And if you find that the defendant was at the time of the homicide insane and irresponsible from any disorder or disease of the brain, resulting in such a derangement of the mental faculties that he had no capacity to distinguish right from wrong as to the act with which he is charged [or that he was impelled by an insane impulse and his powers were so impaired by disease that he could not restrain himself from doing the act], then the defendant is not responsible in law, and you ought to find him not guilty."

There exists this reason why error can not be successfully imputed to the court below on account of this refusal:

In the first place, the instruction asked was substantially similar to instruction 13 already given except that portion of 18 embraced by the brackets, and besides this court does not indorse the doctrine of "insane or uncontrollable impulse," under the influence of which a homicide may be sane just the instant before he strikes the fatal blow, and sane just the instant afterwards, but entirely *non compos* during the instantaneous interval. [State v. Pagels, 92 Mo. loc. cit. 317; State v. Levelle, 34 So. Ca. loc. cit. 131.]

11. Instruction 19 counsel next insist the court should have given is as follows: "19. The court instructs the jury that the law presumes the defendant innocent of the crime charged against him, and this presumption abides and remains with him throughout the trial, unless it is overcome by evidence which establishes his guilt beyond a reasonable doubt. A juror is understood to entertain a reasonable doubt when he has not an abiding conviction to a moral certainty that the party accused is guilty as charged. You should acquit the defendant if you entertain a reasonable doubt as to his guilt; and you should also acquit him if it is not as reasonable, considering all the facts and circumstances proven, to conclude that he is innocent, as to conclude that he is guilty, or if all the facts and circumstances can be reasonably reconciled with any theory other than that of guilt. And you are further instructed that in addition to the legal presumption of innocence specified above in this instruction, there is the further presumption of innocence of the defendant, E. B. Soper, in this case by reason of the marital relations between him and the deceased, Delia Soper. The law presumes that the defendant would not criminally take the life of his wife. Both of these presumptions the State, by the evidence, must overcome beyond a reasonable doubt, before you can convict the defendant."

As to the portion of that instruction relating to the ordinary presumption of innocence, reasonable doubt, etc., the ground had been sufficiently and previously covered. As to the residue of that instruction in reference to an added presumption of innocence in favor of a husband charged with murdering his wife, I have this to say, that subsequent reflection has satisfied my mind that this court went too far in Leabo's Case, 84 Mo. 168, in holding that there existed in the law of evidence, such an added presumption of innocence. The doctrine of that case on that point was incidentally approved (not being raised in the court below) in Moxley's Case, 102 Mo. 374. I think both those cases should be overruled. If they are to stand, it would result and logically follow, that such doctrine must necessarily be extended to every near blood relation of the immediate family of the person accused; no reason exists why it should not, and every one that it should, be thus extended. There is no more reason why a married man accused of the murder of his wife, should have this two-ply presumption thrown around him, than a single man charged with the murder of his sister or his brother, father or mother. Whence I conclude, that an old-fashioned one-ply presumption of innocence is amply sufficient for all practical purposes of the administration of the criminal law.

12. The last instruction, the refusal of which is asserted as error, is numbered 20 in defendant's series, and reads in this way: "The court instructs the jury that it devolves upon the State to prove the guilt of the defendant beyond a reasonable doubt, as charged; and if there is any one single fact constituting an element of the defendant's guilt as charged, which the State has failed to prove beyond a reasonable doubt, this alone is sufficient to raise a reasonable doubt and the jury should acquit the defendant. You are further instructed that you must not only be satisfied beyond a reasonable doubt that all the circumstances proved are consistent

with the guilt of the defendant, but you must also be satisfied beyond a reasonable doubt that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is guilty of the crime as charged."

Under the theory upon which this cause was tried, the simple and single issue joined between the State and the defendant was, as above said, *insanus vel non;* such a defense, the joining of such an issue, is tantamount to a plea of confession and avoidance; the homicide is confessed, but the guilt, the crime of that homicide denied, and this is all that is denied; for it stands to reason that on no other ground would the plea of insanity have any pertinence or relevance in it. [State v. Pagels, 92 Mo. 300; State v. Welsor, 117 Mo. 570.]

This being the case, it was wholly unnecessary, indeed it would have been misleading, to have instructed the jury on the subject of circumstantial evidence. In short, there was no circumstantial evidence about who did the homicide, that was indisputable, while all the evidence as to defendant's mental condition was open, direct and oral. This is enough on the point being discussed; the instruction was rightly refused.

13. The motion for new trial alleges among other things that W. W. Morlan had formed and expressed an opinion before he was impaneled. The affidavit to that effect filed by Mrs. Florence Kemper, was opposed by that of Mr. Morlan, and the trial court disbelieved the former, and believed the latter affiant, and no reason is discovered for disagreeing with, or disapproving of the action of the court. Our invariable rule is that we will not interfere in cases of this sort where affidavits are pro and con, unless some case far stronger than the one presented comes before this court. [State v. Howard, 118 Mo. loc. cit. 136, 137; State v. Taylor, 134 Mo. 109; Morgan v. Ross, 74 Mo. 318; State v. Gonce,

87 Mo. 627; State v. Cook, 84 Mo. 40; State v. Nocton, 121 Mo. 537.]

14.   The motion for a new trial in so far as based on newly discovered evidence is fatally defective in this particular, to wit, the affidavits filed by different persons, only disclose cumulative evidence, that is evidence of the same kind to the same point.

15.   But an objection equally fatal to the motion for a new trial based on evidence newly discovered, consists in the fact that there is no affidavit on the part of defendant. Such affidavit must be filed or a valid excuse given for such failure.   [State v. McLaughlin, 27 Mo. 111; State v. Campbell, 115 Mo. 393; State v. Nagel, 136 Mo. 45; State v. Hunt, 141 Mo. 626.]   The affidavit of defendant's counsel offers this as an excuse:   That since they were appointed counsel for defendant he has been closely confined in the Cass county jail; "that they had found it necessary to put up the plea of insanity for him; that affiants had said defendant prior to the trial of said cause examined by reputable medical experts as to his mental condition and that relying upon the opinion of said medical experts as to the mental condition of said defendant and on other facts touching the mental condition of said defendant which came to affiant's knowledge, they have not relied upon defendant before the trial of said cause to furnish the material facts or names of witnesses by whom facts could be shown or proven, to show the condition of the mind of the defendant at the time of the alleged murder; that by reason of all the facts aforesaid we have not prepared or had signed any affidavit of said defendant in support of the motion for a new trial in this cause."

It is hardly necessary to say that this vicarious affidavit affords no semblance of an excuse for the omission of the principal one, since the affidavit commented on, does not

allege that defendant was insane or that the medical experts believed him to be insane, or that affiants so believed him.

Having carefully examined the record and finding no error prejudicial to the defendant therein, the judgment will be affirmed and the sentence pronounced by the law is hereby directed to be executed. All concur.