STATE of Missouri, Respondent,

v.

George Lawrence WATSON, Appellant.

No. 49971.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1964.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 11, 1965.

**26**

Thomas F. Eagleton, Atty. Gen., Jeremiah D. Finnegan, Asst. Atty. Gen., Jefferson City, for respondent.

David A. Yarger, Versailles, for appellant.

HENLEY, Judge.

Defendant was convicted of possession of burglar's tools (Section 560.115 RSMo 1959, V.A.M.S.) and sentenced to imprisonment in the Penitentiary for a term of five years. He appeals that sentence and judgment as a poor person, the transcript on appeal being furnished him at the cost of the public. He was represented by counsel at both the trial and appellate levels. Trial counsel filed a timely motion for new trial containing eleven assignments of error and thereafter defendant, pro se, stating that he had released his trial attorney, filed an amended motion containing four additional assignments of error. Defendant's brief and supplemental brief as well as his appellate counsel's reply brief rely on twenty-six points some of which, as we shall see, are directed to issues presented to and ruled upon by the trial court and some are not, and many are, in part, duplications of others.

Prior to trial day the defendant filed a motion to suppress the use in evidence of certain articles described in the information seized by police as a result of an alleged unlawful search. Out of the hearing of the jury this motion was submitted to the Court, evidence heard thereon, and overruled immediately before the trial of the case on the merits. The evidence presented on this motion was substantially the same as that produced at the trial and would warrant a finding of the following facts.

On the morning of February 7, 1962, Detective Phil Ratcliff of the Kansas City, Missouri police department was "staked out" across the street from and had under surveillance a basement apartment at 3439 Charlotte occupied by Larry Dean Foster and wife. The police had a warrant for the arrest of defendant on a charge of burglary and apparently had good reason to believe that defendant would appear at the Foster apartment for, later that morning, a black 1955 model Plymouth automobile being driven by defendant accompanied by Raymond Booth pulled up to the curb and stopped directly in front of the apartment. Detective Ratcliff watched the defendant and Booth leave the automobile and enter the apartment building and then summoned Lt. Mark Ruckel in charge of the burglary unit. Within a few minutes Lt. Ruckel, Detective Billy Witcig and another officer arrived on the scene and Detective Ratcliff briefed these officers on what had transpired. Entering the building the officers were admitted to the Foster apartment by Larry Foster and after a search they found

defendant hiding in a closet of the rear bedroom. Defendant was arrested, his person searched, and within a few minutes the Plymouth automobile was searched by Detectives Ratcliff and Witcig. When the police requested the keys to the Plymouth, the defendant stated he did not have the keys, denied owning the automobile, denied knowing anything about the automobile, and, denying that he had driven the automobile to the apartment, he stated that he had walked there. Through the automobile windows Detectives Ratcliff and Witcig saw certain of the tools described in the information on the floor and in the back seat of the automobile and on a ledge above the back seat. These tools, with a pistol in a glove found under the front seat, were removed from the automobile and with the keys found in the ignition switch the car trunk was unlocked and searched resulting in the seizure and removal of more similar tools. After this search and seizure was completed, the automobile was towed by the police to a garage. The evidence is not clear as to which of the tools seized were those seen by the officers through the car windows and which were those removed from the locked trunk. As the search of the automobile was being completed, Lt. Ruckel and other officers with defendant in custody left the apartment building enroute to police headquarters.

Ownership of the automobile and the tools in it was claimed by the defendant's sister and her husband, but defendant negotiated the automobile's purchase and paid for it.

The defendant admits that his arrest pursuant to the warrant was lawful, but contends that the search of the automobile and the seizure of this evidence was illegal and in violation of his constitutional rights, and that, therefore, the Court erred in overruling his motion to suppress the evidence. He also contends that the Court erred in failing to exclude from the evidence the tools later offered and admitted in evidence over his objection. In support of his contentions defendant cites Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed. 2d 777; State v. Edmondson, Mo., 379 S.W.2d 486; and State v. Hunt, Mo., 280 S.W.2d 37. In Preston the petitioner and two others occupying an automobile which had been parked in a business district for approximately five hours were arrested at about 3 a. m. on a charge of vagrancy, their persons searched for weapons, and taken to police headquarters. The automobile was not searched at the time of the arrest but was taken in charge by an officer and driven by him to the police station and thereafter towed to a garage. *After* the three men were booked at the police station, the police made two trips to the garage and on the first trip found two loaded revolvers in the glove compartment. On the second trip, they searched the automobile trunk by entering the trunk through the back seat and seized a stocking with holes for mouth and eyes and other items which presumably would be useful in performing a robbery. Later one of petitioner's companions confessed that he and two others (not naming petitioner) intended to rob a bank in a nearby town. Against the Government's contention that this search and seizure was justified as incidental to a lawful arrest, the Court held that the search was too remote in time or place to have been made as incidental to the arrest, and that the search of the automobile without a warrant failed to meet the test of reasonableness under the Fourth Amendment rendering the evidence obtained inadmissible. In Edmondson the defendant was arrested at a motel in Albuquerque, New Mexico, for an alleged felony committed in Missouri. Defendant's automobile was parked on a public parking lot about 10 feet from the front door of his room. After he was arrested and taken in custody the police took charge of the automobile and drove it to the police department garage where it was searched by the police without a search warrant some three or four hours later. A piece of paper found under the driver's seat was identified as an article taken in the Missouri robbery and was admitted in

evidence over the defendant's objection that this search and seizure violated his Federal and State constitutional rights. In Edmondson, as in Preston, the search of the automobile was too remote in time and in place to have been made as incidental to the arrest. This Court there held that the search violated the Fourth Amendment to the Federal Constitution and that the piece of paper obtained as a result of the search was inadmissible. In Hunt, supra, the trial court sustained a motion to quash a search warrant and suppress evidence obtained by unlawful search, but admitted testimony pertaining to the articles unlawfully seized. Following the Federal rule excluding evidence obtained as a result of an illegal search including oral testimony of facts gathered during an unlawful search, adopted by this court in State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383, this Court held that the testimony pertaining to the articles was inadmissible and reversed and remanded the case. Obviously the Hunt case is not applicable and does not support defendant's point.

The facts in this case and those in Preston and Edmondson, supra, are also obviously different and the rule applied in those cases is not applicable here. Here the automobile was parked at the curb directly in front of the Foster apartment, where defendant had been seen to leave it only a few minutes before. Immediately after defendant's arrest it was searched and articles seized at this spot before defendant was taken to police headquarters and *later* it was towed to a garage. Had the officers not searched the automobile and removed therefrom the items mentioned in evidence as burglar's tools there would have been nothing to prevent others (who could and later did claim ownership of the automobile and tools) from removing the same and destroying the evidence seized by the officers. In Preston the court again stated the rule that when a person is lawfully arrested the police have a right to make a contemporaneous search of his person, of things under his immediate control, and, de-

pending upon the circumstances, of the place where he is arrested. The court repeated that the rule "allowing contemporaneous searches is justified, * * * by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime", but held that " * * * these justifications are absent where a search is remote in time or place from the arrest." In this case the search of the trunk of the Plymouth was immediate in point of time and place and was contemporaneous with and incidental to what was admittedly a lawful arrest. State v. Edwards, Mo., 317 S.W.2d 441, 445 [2, 3].

■ Also, the officers had only to look and see and did, without a search, look through the automobile windows and see, lying in plain view on the floor, the back seat and a ledge above the back seat many of the items described as burglar's tools likely to connect defendant with the commission of the crime of burglary for which he was arrested. The lawful arrest of defendant on a charge of burglary, and the discovery of what could be used as burglar's tools in plain view inside the automobile which defendant had been seen to drive up in a short time before, led to the search of the locked trunk and the seizure therefrom of more like tools, and this search and seizure without a search warrant were not unreasonable under these circumstances but, instead, were based upon probable cause as an incident to a lawful arrest. State v. Camper, Mo., 353 S.W.2d 676; State v. Cantrell, Mo., 310 S.W.2d 866; Commonwealth v. Katz (1964), 202 Pa.Super. 629, 198 A.2d 883.

■ Defendant disclaimed ownership of the automobile or any interest in it. He even denied any knowledge of the automobile or its presence at the curb and denied driving it there by stating that he had walked to the Foster apartment. Having disclaimed any interest in the automobile searched, he cannot now, for this additional

reason, be heard to question the legality of the search or the resultant seizure. Nor can his disclaimer once made be recalled at his pleasure. State v. Cantrell, supra; 79 C.J.S. Searches and Seizures § 60, page 816; State v. Pigg, 312 Mo. 212, 278 S.W. 1030, 1033 [4]. The motion to suppress was properly overruled and the Court did not err in admitting into evidence State's Exhibit No. 1 (the tools) over defendant's objection.

■ Defendant attacks the information as insufficient in that it fails to state as an essential element of the charge of possession of burglar's tools "intent" that the tools be used for burglarious purposes. The information follows the form of the statute (Section 560.115) and this is generally deemed sufficient to charge an offense. State v. Anderson, Mo., 232 S.W.2d 909 and cases there cited. In State v. Crouch, Mo., 353 S.W.2d 597, an information not unlike the information here was under attack by a motion to quash treated as a motion to dismiss. The trial court sustained the motion, quashed the information and discharged the defendants. On an appeal from that order by the State (Supreme Court Rule 28.04, V.A.M.R.) this Court held that the information was sufficient to charge the offense of possession of burglar's tools and reversed and remanded the case for trial. The information here is sufficient.

■■ As to assignments of error numbered three and four in his motion for new trial the defendant says that the Court erred in not discharging the jury on his motion after the Court had sustained his objections to opening statement remarks of the prosecuting attorney that: (1) the defendant "is known as a thief", and (2) certain named persons present when defendant was arrested "are known burglars and known thieves." The State contends that the defendant did not move for a mistrial and discharge of the jury for the stated reasons, but a close examination of the transcript will disclose that the State is

mistaken. An examination of the transcript will also disclose that when these remarks were made by the prosecutor he was relating to the jury that which he expected to prove as a part of the State's case. Counsel for the State has a duty to inform the jury and the defendant in his opening statement what he expects the evidence to be produced by the State will properly show. These statements of his conclusions of what the State expected its evidence to show did not go without proof for the State's evidence was that the defendant had been previously convicted of bank robbery and that his reputation in the police department and with police officers was that of a burglar and that he had a previous record for stealing. Also, there was evidence that Raymond Booth, who accompanied defendant to the apartment of Larry Foster, and Foster had previous convictions for stealing and had reputations as being thieves and burglars. These conclusions drawn by the Prosecuting Attorney in his opening statement were not so improper under the circumstances as to dictate a conclusion by us that the trial court committed error prejudicial to the defendant when the Court, within its discretion, overruled the motion for a mistrial. State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, 141.

■ Defendant also assigns as error the admission in evidence of: (1) records of the convictions of Raymond Booth and Larry Foster, (2) record of the prior conviction of defendant in Federal Court of Bank Robbery, being State's Exhibit 3, and (3) testimony of a police officer that defendant's reputation in the police department was that of a burglar. Defendant argues that it was error for the Court to admit in evidence over his objection court records of prior convictions of Larry Foster for stealing and for burglary, second degree, and stealing, and of Raymond Booth, for stealing, for the reasons that "evidence of [their] prior convictions is not competent to prove their reputations nor to prove their association with appellant." At the time

these records of conviction were read into evidence, defendant's objections were, in substance, that the records do not tend to prove association [of defendant with Foster and Booth], that the convictions of Foster and Booth are too remote [being in 1957 and 1959] and would not be competent or relevant to prove *intent* as an element of the charge of possession of burglar's tools. The objection for the reason that these convictions were not competent to prove the reputations of Foster and Booth is presented for the first time in the motion for new trial and is not preserved for appellate review because not presented to the trial court at the time of the objection to the evidence. State v. Brown, Mo., 360 S.W.2d 618 [8]. It will be noted that defendant's complaint is that these convictions were not competent to prove the reputations of Foster and Booth; not that this evidence constituted an attack upon defendant's character or reputation. In State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 103 A.L.R. 1301, a leading Missouri case on the possession of burglar's tools, we held that possession must be had "with the general intent that they shall be used for a burglarious purpose" and cited cases with approval holding that the State may show to prove burglarious intent that defendant associates with burglars and is himself a burglar and thief. See also: State v. Medley, 360 Mo. 1032, 232 S.W.2d 519; State v. Lorts, Mo., 269 S.W.2d 88; People v. Jefferson, 161 Mich. 621, 126 N.W. 829; People v. Howard, 73 Mich. 10, 40 N.W. 789; Brown v. State, 22 Ohio Cir. Dec. 93; 20 Am.Jur. 289, sections 310, 313. The evidence of the convictions of Foster [in whose apartment defendant was found hiding in a closet] and of Booth [who accompanied defendant in the automobile containing the tools to the Foster apartment] is relevant as throwing light on defendant's intent in possessing the tools. It was admissible on this constitutive element of the offense charged and the fact that this evidence might also tend to discredit the character or affect the reputation of Foster and Booth or that it might

also tend to discredit defendant's character or affect his reputation would not be a valid ground for excluding the evidence. State v. Knight, 356 Mo. 1233, 206 S.W.2d 330, 333. Nor is there any merit in defendant's contention that the convictions of Foster and Booth are too remote in point of time from the offense for which defendant was convicted. The remoteness of such evidence goes to its weight and not to its admissibility and the question of excluding evidence because of its remoteness lies largely in the sound discretion of the trial judge. 22A C.J.S. Criminal Law § 683, page 744; State v. White, 339 Mo. 1019, 99 S.W.2d 72, 74. The trial court did not abuse its discretion in the admission into evidence of these convictions. Evidence of the prior conviction of defendant of Bank Robbery and testimony of a police officer that defendant's reputation in the police department was that of a burglar was admissible, for the reasons already stated, on the element of intent, and these assignments are ruled against defendant. State v. Hefflin, supra; State v. Lorts, supra.

■ Defendant next assigns as error the admission in evidence of: (1) State's Exhibit No. 2, being two sheets of paper bearing a latent fingerprint of defendant and certain longhand memoranda, (2) testimony of a police officer identifying this latent fingerprint on State's Exhibit No. 2, and (3) State's Exhibit No. 6, being a photograph of this latent fingerprint. The two sheets of paper identified as State's Exhibit No. 2, bearing a latent fingerprint of defendant, were found in a box along with tools in the automobile trunk. Exhibit No. 2 was first offered during the testimony of Detective Ratcliff and on objection by the defendant that "no foundation was laid, there's no proof it is in the defendant's writing or connected to him" the Court sustained the objection. Later, during the testimony of Officer Mettenburg, Exhibit No. 2 was admitted in evidence over defendant's objection "to that portion [of the two sheets of paper] from which no print was taken." No reason was assigned for the objection at

the time it was overruled by the Court. In his motion for a new trial and in his brief the defendant contends the handwriting on the sheets of paper was not established to be that of defendant and, therefore, "lacked proper foundation to connect the paper to defendant"; that the State failed to show that the defendant did not handle these papers between the date of his arrest and trial date and at such time put his fingerprint thereon; and, for these reasons these papers should not have been admitted in evidence. Defendant also contends that these two sheets of paper were unlawfully seized from the automobile trunk as a result of the alleged illegal search and for that additional reason should not have been received in evidence. What we have said above with reference to the latter contention answers without more this facet of this assignment. The other reasons now assigned in his motion for a new trial, and briefed, not having been presented to the trial court at the time of his objection to the offer of Exhibit No. 2 are not preserved for appellate review. State v. Brown, Mo., 360 S.W.2d 618 [8]. Defendant's objections to the testimony of the police officer who identified the latent fingerprint on one of the two sheets of paper comprising State's Exhibit No. 2 appears to be that the officer was not qualified to testify as an expert. In answer to these objections it is sufficient to say that the evidence shows that the police officer was properly qualified to testify as a fingerprint expert; furthermore, there was no proper objection at the trial to the officer's qualifications. By his repeated objection that there was no evidence that defendant did not place his fingerprint on one of the sheets of paper between the date of his arrest and trial date, defendant seems to be saying that the State had not properly established the chain of custody of these papers. Nowhere does he contend affirmatively that he *did* make this fingerprint during this period, nor is there evidence even remotely supporting such a contention. The State is not required to show or account for the hand to hand custody of these papers during the intervening time between his arrest and trial date. State v. Burney, 346 Mo. 859, 143 S.W.2d 273, 276–277. Nor was the State required to show, under the circumstances, that the memoranda on these papers was in the handwriting of the defendant. State v. Soper, 148 Mo. 217, 49 S.W. 1007. The memoranda on the papers further tend to prove the essential element of the intent with which defendant possessed the tools, and was admissible for that reason. State v. Lorts, supra; People v. Miller, 134 Cal. App.2d 792, 286 P.2d 415. Officer Mettenburg, at whose direction the photograph of defendant's latent fingerprint identified as State's Exhibit No. 6 was taken, properly identified and adequately qualified Exhibit No. 6 as an accurate reproduction of defendant's fingerprint and the Court did not err in admitting this exhibit into evidence. State v. Duncan, Mo., 316 S.W.2d 613, 619. The assignments of error in admitting State's Exhibits Nos. 2 and 6 and the admission of the testimony of Officer Mettenburg are ruled adversely to defendant.

Defendant next assigns as error the failure of the Court to sustain his motions for judgment of acquittal filed at the close of the State's case and filed at the close of the whole case. Defendant offered evidence in his defense and thereby waived the motion filed at the close of the State's case. State v. Brown, Mo., 360 S.W.2d 618; State v. Hutchin, Mo., 353 S.W.2d 701, 702 [2]. As to his contention that the Court erred in denying his motion for judgment of acquittal at the close of the whole case, he preserves for review and argues, only that the State failed to prove beyond a reasonable doubt that defendant was the owner of the tools seized or that he was in possession of them. The State is not required to prove ownership of the tools by defendant; it is sufficient that the State prove possession only for the statute prohibits merely the custody or possession of burglar's tools. Section 560.115 RSMo 1959, V.A.M.S. The evidence was sufficient on the question of possession or custody of the

tools by defendant to permit the case to be submitted to the jury and the Court did not err in overruling defendant's motion for judgment of acquittal filed at the close of the whole case.

Defendant next assigns as error that the Court forced defendant to accept defense counsel appointed by the Court over the objection of both defendant and counsel. What defendant appears to be trying to say is that his court-appointed trial counsel was unfaithful to his cause. The record is absolutely barren of the slightest indication that this charge of error has any basis in fact and the assignment is ruled against defendant. State v. Livers, Mo., 340 S.W.2d 21, 25 [4]. The transcript of the trial proceedings shows that defendant was ably represented by competent counsel.

■ Defendant next assigns as error that "the Court erred in admitting into evidence the prosecuting attorney's description of a tire tool as a Jimmie Bar, also erred in information and Instruction No. 2 to the jury by naming said tire tool as Jimmie Bar." No objection to the use of this description was made at the trial and this broad general point raised for the first time in defendant's motion for new trial preserves nothing for review. State v. Leonard, Mo., 182 S.W.2d 548 [2, 3]. Too, a jimmy is one of the tools specifically mentioned and banned by Section 560.115, and the tools described as tire tools by defendant are for all practical purposes the same as a jimmy, and may be possessed with an intent that constitutes them burglar's tools. State v. Crouch, supra, 353 S.W.2d 1. c. 601.

■ In his motion for new trial defendant raises the point that the Court erred "in accordance with a piece of paper, so called scare sheet, introduced * * * without defendant's knowledge * * *, [and] subsequently this defendant was not able to call Raymond Booth on behalf of the defense." Defendant's pro se brief identifies this "scare sheet", so called, as State's Exhibit No. 2 with which we treated hereinabove. Defendant appears to be saying in connection with this contention that he was surprised by the introduction of this evidence and that because of surprise he was unable to secure the attendance of this witness at the trial who would allegedly testify that this exhibit was the property of the witness. No objection was made at the trial to the exhibit on the ground or claim of surprise; nor did he contend then that he was deprived of the testimony of the said Booth because of surprise. Nor does he specify in this assignment wherein the Court may have otherwise erred. The assignment preserves nothing for review and is ruled against defendant. State v. Williams, Mo., 323 S.W.2d 811.

■ In the words of his motion for new trial, the defendant in his last assignment of error, says: "The Court erred in that after deliberating two hours were locked as 6 said the defendant was Not Guilty. Poling the jury #9 said they could not reach a verdict. Judge Buzard made the following statement 'That it cost money to conduct a trial, you are as qualified as any 12 people, it is your duty to bring back a verdict'. Said 'go back to the jury room.'" The above assignment is typical of the vagueness of many of the points he makes in his pro se brief and, like many others, is not altogether supported by the record. The record does disclose that sometime after the jury had retired to the jury room to deliberate they were returned to the jury box and a discourse was carried on between the Court and some of the jurors in which a part of the jurors said that it was their opinion the jury would not be able to agree on a verdict and others were of the opposite opinion. No objection was made to this discourse by defendant and we fail to find therein where the Court said or did anything that would be error prejudicial to defendant. At this point the Court gave the jury Instruction No. 7-A. No objection to the instruction was made by the

defendant at the time or later in his motion for new trial. This instruction is the same as that given and approved in State v. Roberts, Mo., 272 S.W.2d 190, 192 in a similar situation. Defendant argues in his brief that this instruction indicated to the jury that the trial court "wanted a guilty verdict" and "made the jury feel guilty themselves." The instruction is not subject to the construction given it by defendant; the instruction was properly given, and the point is ruled against defendant.

The other assignments made by defendant are not properly preserved in the motion for new trial or have not sufficient merit to call for discussion.

We have examined and found no prejudicial error in those parts of the record which we examine irrespective of the allegations in the motion for new trial.

Finding no reversible error, the judgment and conviction are affirmed.