## WILLIAM HIX v. STATE.

No. A-4656.   Opinion Filed Jan. 10, 1925.
(232 Pac. 123.)

(Syllabus.)

1.  **Evidence—Conditions Which Render Confession Inadmissible.**
    Primarily there are two facts which render a confession inadmissible as evidence, first, that it was obtained under any form of compulsion, so that to receive it in evidence would violate the defendant's constitutional privilege against self-incrimination; and, second, that it was made under such circumstances of hope or fear as to create a fair probability of its testimonial unworthiness.

2.  **Same—Confession Prima Facie Admissible.** Prima facie any confession is admissible in evidence, and where its admissibility is challenged by the defendant, the burden is on him to show that it was procured by such means or under such circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact.

3.  **Same—Admissibility of Confession Question for Court and Discretionary.** The admissibility of a confession, where it is challenged, is a question solely for the court after hearing, in the absence of the jury, all the evidence on each side respecting the circumstances under which the confession was made; and the court is vested with a large discretion in determining the matter.

4.  **Trial—General Verdict of Guilty Held Equivalent to Finding Confession Voluntarily Made.** Where the evidence as to the nature of the confession, whether voluntary or not, is heard in the presence of the jury without objection, and the trial court submits to the jury the question of whether or not the confession is voluntarily given, and a general verdict of guilty is returned, it is equivalent to a finding by the jury that the confession was voluntarily made.

5.  **Appeal and Error—Trial—Admissibility of Confession Question of Law for Court—Submission of Character of Confession to Jury Held Favorable to Defendant.** Where the evidence on the part of the state shows the confession to have been voluntary, and there is no evidence on behalf of the defendant to show that the confession was involuntarily given, the question of the admissibility of such confession was one of law for the court, and the submission of such question to the jury under such circumstances was favorable to the defendant.

6. **Record Free from Prejudicial Error.** Record examined, and held to be free from prejudicial error.

Appeal from District Court, Beckham County; T. P. Clay, Judge.

William Hix was convicted of grand larceny and sentenced to serve a term of one year in the state penitentiary, and he appeals. Affirmed.

Tracy & Minton, for plaintiff in error.

George F. Short, Atty. Gen., and Baxter Taylor, Asst. Atty. Gen., for the State.

MATSON, P. J. By judgment of the district court of Beckham county rendered on the 21st say of October, 1922, the plaintiff in error, William Hix, was convicted of the crime of grand larceny and sentenced to serve a term in the state penitentiary for a period of one year. From such judgment he has appealed to this court. The information charged the larceny of one Dixie magneto, with impulse starter, from one T. J. McAlpin on or about the 1st day of July, 1921. It is not necessary to set out in detail a statement of the evidence adduced by the state. It is sufficient to state that such evidence, if believed, is amply sufficient to sustain the verdict and judgment.

After the arrest of plaintiff in error, and at the time that he was in the custody of the sheriff in the jail of Beckham county, he made an oral confession of guilt to a deputy sheriff, and in this connection it is contended that the evidence of such alleged confession was improperly admitted, in that the same was given involuntarily because of certain inducements offered the plaintiff in error to make the same. The plaintiff in error did not testify as a witness in the case either on the merits or on the question of the voluntary or involuntary nature of the confession. The only evidence, therefore, on the question of whether this alleged confession was voluntarily given or not, is the testimony of

the deputy sheriff. We quote from his testimony as follows:

"Q. Did you bring him to Sayre? A. I did.

"Q. Talk to him at Sayre any? A. Yes; when I started to lock him up he wanted me to help him make bond. I told him the best thing he could do was to come clean if he got it. He taken me around the cage and said, 'I am going to come clean with you'; he said, 'I got that myself.'

"Q. Where did he say he got it? A. He said he got it off the tractor.

"Q. What did you say to him then? A. I told him he could make a statement to you.

"Q. Did he do so? A. Yes, sir.

"Q. In your presence? A. Yes, sir.

"Q. Was it committed to writing? A. It was.

"Q. Did you sign that statement as a witness? A. I did.

"Q. If you saw that statement would you recognize it? A. Yes, sir.

"Q. I will ask you to examine this and see if that is the statement? A. It is.

"Mr. Speed: At this time the state would like to offer it in evidence.

"Mr. Minton: Just wait. We would like to ask some questions.

"The Court: Go ahead.

"Questions by Mr. Minton: Q. Mr. Marsh, where were you at the time that it was first mentioned to you about this magneto? A. Where was I at?

"Q. Yes; where did Mr. Hix first mention about coming clean about this magneto? A. There in the jail.

"Q. You already had him in jail? A. Already had in there.

"Q. I will ask you if you advised him at that time of his rights of having an attorney before you talked with him about it?

"Mr. Speed: Object to that.

"The Court: Objection sustained. That is not the test. The test is whether it was freely and voluntarily made.

"Q. I will ask you if it isn't a fact that Mr. William Hix asked you if you couldn't get him out. A. I couldn't say.

"Q. You don't deny that he asked that?

"Mr. Speed: Objected to as incompetent, irrelevant, and immaterial.

"The Court: Overruled. Let him answer. A. He asked me to help him.

"Q. What did you tell him? A. The best I remember, I told him the best thing he could do was to come clean; if he got it he just as well own up to it.

"Q. What else did you tell him in connection with that? A. I couldn't say just what else I told him.

"Q. Mr. Marsh, isn't it a fact that you told him you could get him out of it if he would come clean? A. No, sir.

"Q. And that it was the best thing for him to just acknowledge it? A. I told him it was best for him to acknowledge it if he got it.

"Q. I will ask you if you didn't tell him you could get him out and would get him out if he would acknowledge it? A. No, sir.

"Q. I will ask you if he didn't say to you at that time he never got it but 'I will acknowledge it to get out of it'; and you said, 'If you will do it you can go back home'? A. No, sir.

"Q. No such conversation occurred? A. No, sir.

"Q. I will ask you if you said it would be lighter on him if he acknowledged? A. I told him possibly he could get out of it easier if he acknowledged to it if he got it.

"Questions by the Court: Q. Was any inducement of any kind offered to the defendant? A. None that I know of.

"Q. What did the county attorney say to him, if anything? A. I couldn't say.

"Q. Did you say anything to the county attorney when you took him up there? A. I told him he wanted to make a statement.

"Q. Did the county attorney say anything to him then- A. I couldn't say. I suppose he did. I don't remember what it was.

"Q. You don't have any recollection of what it was? A. No, sir.

"Q. Did anybody say anything to him in your presence, or in the presence of the county attorney, with reference to what would happen to him if he didn't make that statement? A. Not that I know of.

"Q. But you told him down in the jail it would be lighter on him if he confessed it? A. I told him if he was guilty of it, I believed it would be best for him to acknowledge it.

"Q. Do you remember the exact words you used? A. No; something to that effect.

"Q. You never told him you would see to it he got out of it? A. No, I told him I would help him the best I could.

"Q. You mean help him out of jail? A. No, I suppose he meant for me to help him get bond.

"Q. You didn't tell him you would help him get out of trouble? A. No, sir; not a bit of it.

"Q. The conversation was in regard to helping him get bond? A. I suppose that was what he had reference to because I knowed nothing about the other.

"Q. Did he ask you what to do about the matter when you told him you thought it would be best to tell the truth, and if he was guilty to confess it? A. I couldn't say.

"Q. When he took you around behind the cage and told you he was going to come clean, had you said anything

to him back there? A. No, sir; I was standing in the door fixing to leave the jail.

"Q. The only talk you had with him was prior to that time? A. Yes, sir.

Cross-examination:

"Questions by Mr. Minton: Q. But it is a fact that you told him that if he would just make a confession it would be lighter on him? A. I told him if he was guilty of it, I believed he would get out of it lighter, something to that effect.

"Mr. Minton: We ask that all reference to this statement or confession be stricken because it was induced by promise from a person he considered having authority.

"The Court: Overruled. I will let the witness' statement in but as to the statement made before the county attorney, there has been no proof as to whether that was voluntarily made or not.

"Mr. Speed: At this time the state offers it in evidence.

"The Court: There has been no proof as to whether that statement was voluntarily made or not. (Objection sustained at this time. Witness excused.)"

In Berry et al. v. State, 4 Okla. Cr. 202, 111 P. 676, 31 L. R. A. (N. S.) 849, this court held:

"Primarily there are two facts which render a confession inadmissible as evidence; first, that it was obtained under any form of compulsion, so that to receive it in evidence would violate the defendant's constitutional privilege against self-incrimination; and, second, that it was made under such circumstances of hope or fear as to create a fair probability of its testimonial untrustworthiness.

"Prima facie any confession is admissible in evidence; and where its admissibility is challenged by the defendant, the burden is on him to show that it was procured by such means or under such circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact.

"The admissibility of a confession, where it is chal-

lenged, is a question solely for the court after hearing, in the absence of the jury, all the evidence on each side respecting the circumstances under which the confession was made; and the court is vested with a large discretion in determining the matter."

See, also, Mays v. State, 19 Okla. Cr. 102, 197 P. 1064.

The burden is upon the plaintiff in error to show either that the confession was obtained by duress or compulsion, or else that it was made under promise of hope or by reason of fear, in order to create a probability of its testimonial untrustworthiness. Hembree v. State, 15 Okla. Cr. 424, 177 P. 385; Berry et al. v. State, supra.

There is no conflict in the evidence in this case as to whether or not the confession of the plaintiff in error was voluntary. All the evidence before the court shows that the confession was voluntarily made without any promise of hope of reward to obtain the same. The plaintiff in error did not even take the witness stand to refute or contradict the statements made as to the voluntary nature of the confession by the deputy sheriff who heard it.

The trial court gave the following instruction:

"The state has introduced certain statements claimed to have been made by the defendant after his arrest and while he was in custody charged with the offense for which he is being tried and which statements are relied on in part to establish the defendant's guilt of the charge against him, and the court instructs you that confessions made by one charged with an offense must be carefully scrutinized and received with caution, yet when freely, deliberately, and voluntarily made, such confessions and statements are to be considered as evidence for or against the person making the same just as any other evidence and given such weight as the jury deem the same entitled to have; but if a confession or statement made by one in custody under circumstances showing that he was induced to make the same by a promise of aid, or in any other way, such statement or confession was so induced as to show that it was not freely and voluntarily made, then the same cannot be considered

as evidence against the person so making such statement and in this case if you should find that statements made by the defendant while in custody were not freely and voluntarily made, then you must disregard such statements and not give the same any weight in arriving at your verdict in the case."

It was the province of the jury to say, under such instruction, whether or not the confession was voluntary and upon the evidence presented in this case we are of the opinion that the jury would not have been justified in reaching any other conclusion than that the confession was voluntarily made.

The other assignments of error, to wit, that there is no sufficient proof of the value of the property, and that the trial court erred in admitting in evidence the property alleged to have been stolen without the same having been properly identified, are wholly without merit. All the testimony in the case is to the effect that the property stolen was of the value of $65, and exhibits admitted, we think, were sufficiently identified to be the property alleged to have been stolen and found in the defendant's possession.

Finding no prejudicial error in the record, the judgment is affirmed.

BESSEY and DOYLE, JJ., concur.