# JESSE WILLIAMS v. STATE.

No. A-5726.   Opinion Filed Aug. 18, 1927.
(258 Pac. 1066.)

2

J. G. Ralls and Clarence McCasland, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J.   This appeal is from a judgment of the district court of Atoka county, rendered on the verdict of a jury finding appellant, Jesse Williams, guilty of murder and assessing his punishment at imprisonment in the penitentiary for life.

We will consider the assigned grounds of reversal in the order in which they are presented in appellant's brief.

Upon arraignment, appellant interposed a demurrer to the information on the ground that it does not substantially conform to the requirements of chapter 7, art.

8, C. S. 1921, and that the facts stated do not constitute a public offense.

The information, omitting formal parts, charges:

"That Maggie De Graff, formerly Maggie Sexton, and Jess Williams did in Atoka county, and in the state of Oklahoma, on or about the 17th day of June, in the year of our Lord 1917 and anterior to the presentment hereof, commit the crime of murder in manner and form as follows, to wit:

"The said Maggie De Graff, formerly Maggie Sexton, and Jess Williams, and each of them, acting together, did then and there willfully, wrongfully, unlawfully, feloniously, with malice aforethought, without authority of law, and with a premeditated design to effect death, kill and murder one Willis Sexton, by then and there willfully, wrongfully, unlawfully, and feloniously, without authority of law, with malice aforethought, and with a premeditated design on the part of the said Maggie De Graff, formerly Maggie Sexton, and Jess Williams, and each of them, inflicting mortal wounds upon him, the said Willis Sexton, by shooting the said Willis Sexton with a 32-caliber automatic pistol, which the said Maggie De Graff, formerly Maggie Sexton, and the said Jess Williams then and there had held in their hands, and thereby inflicting certain mortal wounds upon the body of him, the said Willis Sexton, of which said mortal wounds he, the said Willis Sexton, then and there died."

The following statement of the material facts which we quote from the brief of the state will answer the purpose of our consideration of the appeal.

Willis Sexton, the deceased, was a Choctaw Indian living on a farm near Wesley, Atoka county. In June, 1917, he suddenly disappeared and since that time nothing has ever been heard of him. He was last seen by neighbors in the town of Pittsburg in Pittsburg county, on the 9th day of June, 1917.

The defendant is a cousin of the deceased's wife, Maggie, since married to a man by the name of De Graff.

The defendant was making a share crop on the deceased's land. At the time deceased disappeared his wife, Maggie, was visiting relatives in the state of Arkansas. About a year after her return she brought suit for divorce, obtained the same, and afterwards married De Graff. The defendant lived on the farm with Maggie Sexton until September, 1917, when he was drafted into the army and served as a soldier overseas until the year 1917, when he returned to this country. Afterwards he married and moved to Burkburnett, Tex., at which place he was arrested and was jointly charged with Maggie De Graff, as alleged in the information herein. In September, 1924, the sheriff of Atoka county, together with one of his deputies and the county attorney, went onto the farm of the deceased, near Wesley, and in a grove on a mound about 300 yards southwest of the house in which the deceased had lived dug up the skeleton of a human being. The evidence showed that the deceased had black hair and was about 5 feet 11 inches tall. The skeleton dug up when the bones were placed together measured about 5 feet 10 inches and certain portions of human hair found were of black color. At that time the defendant had been arrested and was being held in jail at Coalgate, and his codefendant was at that time being held in jail at Atoka. After the sheriff had dug up this skeleton, he proceeded to the jail at Coalgate and told the defendant about it. The defendant made a confession orally to the sheriff, the county attorney, and a deputy sheriff, and the next morning the substance of the oral confession was reduced to writing and signed by the defendant.

Against the objections of the defendant, the typewritten confession was offered in evidence and read to the jury. It is as follows:

"Statement of Jessie Williams.

"I, Jessie Williams, make this voluntary statement

of my own free will and accord, without fear of punishment or promise of reward.

"I am 30 years of age. I know how, when, and where Will Sexton was killed. The wife of Will Sexton, Maggie Sexton, was not there in the house at Wesley where this occurred at the time, but had purposely arranged to be away.

"It was understood that I would write her when Will Sexton was put out of the way. I did write her and told her everything was O. K., and she thereupon returned in a few days.

"The killing of Will Sexton had been previously arranged by Maggie Sexton and myself. Maggie Sexton, Will Sexton's wife, had made a previous trip about six months prior to this time. I told Maggie Sexton on the day she returned where the body was. She burned some of the bedclothing that was stained with blood either that evening or the next day.

"I killed Will Sexton at Maggie Sexton's request. She was the first one to approach me on the subject. I killed him on the morning of the 16th of June, 1917, about daylight. The weapon used was a 32 automatic. This was Will Sexton's gun that I used. Maggie Sexton left this gun in the strong box at Stringtown, and I found it there when I returned from the army. The gun was later stolen from me at Burkburnett, Tex.

"I shot him twice in the right side of the head, low down.

"I taken this body and deposited it in a grove south and west of the house about 300 yards. I dug a hole and deposited the body in it.

"The next day after she came home she suggested I haul some old rotten hay off of the hay meadow and put it over the place where the body was buried.

"I signed this 19th day of September, 1924.

"Jessie Williams.

"Witnesses:
    "W. H. Parker.
    "O. P. Ray, Jr."

It appears also from the testimony of Mrs. Winnie Woods that the defendant had confessed to her that he had shot and killed Sexton and buried him on the farm; that his statement was that he shot him in the north bedroom of the house while he was asleep, and that he buried the body in a little grove southwest of the house; that at that time she asked him if stains on the floor of the room were blood stains and he said they were, and that he had removed other stains with hot embers; that this conversation with the defendant was in 1919.

It appears that Mrs. Woods kept secret this confession for a number of years. However, it is evident that it was through her that the skeleton was located.

As a witness in his own behalf, the defendant testified that he did not remember making any confession, that he did remember of the sheriff coming to him and stated that the sheriff held out certain promises to him, but he does not in any place in his testimony indicate that these promises or hope of immunity relied upon were held out to him before he made the statement to the sheriff.

The first assignment of error is the overruling of the demurrer to the information and the motion in arrest of judgment.

In this connection it is contended that the information is insufficient to charge murder, in that it does not allege that any assault was committed by the defendant upon the deceased, nor that the pistol was loaded, nor that a leaden bullet was discharged into the body and head of the deceased.

An information is sufficient which states the offense clearly and distinctly in ordinary and concise language, without repetition, and in such manner to enable a person of common understanding to know what is intended.

It is well settled that it is not necessary that the in-

formation should aver that the pistol was loaded with gunpowder and leaden bullets. When the kind of fire-arm is designated, the manner of using it, the intent with which the act is done, and the person against whom the act is directed are alleged in plain and concise language, the act charged as the offense is sufficiently pleaded. Deen v. State, 7 Okla. Cr. 150, 122 P. 941; Heatley v. Territory, 15 Okla. 72, 78 P. 79.

The information being sufficient, the demurrer thereto and the motion in arrest of judgment were properly overruled.

It is next contended that the trial court erred in permitting the state, over the objections of defendant, to indorse additional names of witnesses on the information on the day the case was called for trial.

In this connection the record discloses that the names of all of these witnesses, with their post office addresses, had been served upon the defendant at least two days prior to the date the case was set for trial.

In the case of Smith v. State, 5 Okla. Cr. 282, 114 P. 350, this court held:

"Where the record shows in a capital case that a list of the witnesses to be used upon the trial of said cause by the state was duly served upon the defendant more than two days before the trial began, the defendant cannot be heard to complain if the court permits such names to be indorsed on the indictment at any time during the trial."

It follows that this assignment is without merit.

It is next contended that the court erred in admitting in evidence alleged confessions of the defendant, because, if made, they were not voluntary.

The record shows that when proof of the written confession was offered, the defendant objected to its admis-

sion on the grounds just stated. The court then caused the jury to retire, and the sheriff, deputy sheriff, and the county attorney each testified, in substance, to the effect that the confession as set forth in the statement was voluntarily made. The defendant offered no testimony at this time tending to support the grounds of the objections made.

In this state it is a settled rule of practice that the admissibility of a confession, where objection is interposed, is primarily a question for the court and should be determined preliminary to allowing the confession to go to the jury, and the burden is on the defendant to show that it was procured by such means or under such circumstances as to render it inadmissible, unless the evidence on the part of the state tends to show that fact. Berry v. State, 4 Okla. Cr. 202, 111 P. 676, 31 L. R. A. (N. S.) 849; Wilson v. State, 17 Okla. Cr. 47, 183 P. 613; Mays v. State, 19 Okla. Cr. 102, 197 P. 1064; Guthery v. State, 24 Okla. Cr. 183, 216 P. 948; Doublehead v. State, 27 Okla. Cr. 375, 228 P. 170; Hix v. State, 29 Okla. Cr. 20, 232 P. 123.

Considering all the evidence on the grounds of admissibility of the defendant's confession, the conclusion is reached that the objections thereto were properly overruled.

It is also contended that the court erred in overruling the defendant's motion for a directed verdict of acquittal in the form of a demurrer to the state's evidence.

This proposition is based upon the contention that the information alleges that the deceased was shot in the body, while the evidence discloses that he was shot in the head.

The rule has always been and is universal that in charging a homicide it must be alleged that the wound

was mortal, and that the wounded person died thereof. But it is not now deemed necessary to describe the wound, or is it necessary to state that it was of a character likely to produce death.

Wharton says:

"Nor is it necessary to specify the portion of the body upon which the wound was inflicted; the words 'upon the body' are a sufficient averment of location. If the wound be stated to be on one part of the body and proved to be on another, the variance is not fatal, though it had been held that the allegation that the wound was inflicted on the body of the deceased is necessary. Nor need the wound which caused death be proved exactly as alleged; it is sufficient if there is a substantial conformity between the allegation and the proof." Wharton on Homicide, pp. 859, 860, and cases cited.

The motion for a directed verdict was properly overruled.

Finally, it is contended that the trial court erred in refusing to give requested instructions.

The instructions given by the court, to which no objection was made or exception taken, fairly covered the law in the case, and the defendant's requested instructions were fully covered by those given by the court.

Upon an examination of the whole case, we find there was no prejudicial error in the admission or exclusion of evidence. The evidence fully warranted the verdict rendered by the jury.

Finding no error in the record prejudicial to the defendant, the judgment is affirmed.

EDWARDS and DAVENPORT, JJ., concur.