## ARTHUR BERRY and HARRISON KIMBLE v. STATE.

### No. A-207.   Opinion Filed November 22, 1910.

1.  **LARCENY—Appropriating Lost Property — Information.** Upon an information drawn under sec. 2591, Snyder's Comp. L. Okla., defining larceny generally, a conviction may be had upon proof, made as provided in sec 2592. that the accused found lost property under circumstances which gave him means of inquiry as to the owner thereof, and that he appropriated the same to his own use without making a reasonable effort to discover the owner and restore the property; the latter section not creating or defining a separate offense, but only prescribing a rule of evidence.

2.  **EVIDENCE — Confessions—Admissibility.** Primarily there are two facts which render a confession inadmissible as evidence; first, that it was obtained under any form of compulsion, so that to receive it in evidence would violate the defendant's constitutional privilege against self-incrimination; and second, that it was made under such circumstances of hope or fear as to create a fair probability of its testimonial untrustworthiness.

3.  **SAME—Burden of Proof.** Prima facie any confession is admissible in evidence; and where its admissibility is challenged by the defendant, the burden is on him to show that it was procured by such means or under such circumstances as to render it inadmissible, unless the evidence   on the part   of the state tends to show that fact.

4.  **SAME—Question for Court.** The admissibility of a confession, where it is challenged, is a question solely for the court after hearing, in the absence of the jury, all the evidence on each side respecting the circumstances under which the confession was made; and the court is vested with a large discretion in determining the matter.

5.  **SAME—Province of Jury.** After a confession has been admitted, the defendant is entitled to have the evidence in regard to the circumstances under which it was made given anew to the jury, not that the jury may pass upon its competency or admissibility, but for the purpose of enabling them to judge what weight and value should be given to it as evidence; and upon his request the defendant is entitled to an instruction on that point.

6.  **INSTRUCTIONS — Presumption of Innocence.** An instruction that the defendant is presumed to be innocent until his guilt is proved by competent evidence beyond a reasonable doubt, is not erroneous, but is proper.

(Syllabus by the Court.)

*Appeal from District Court, Muskogee County; John H. King, Judge.*

Arthur Berry and Harrison Kimble were convicted of grand larceny, and they appeal. Affirmed.

. *W. A. Killey, Daniel L. Stanley,* and *George K. Powell,* for plaintiffs in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.—On question of variance: *People v. Buelna,* 81 Cal. 135; *State v. Hayes,* 98 Iowa, 619. On admissibility of confessions: *Dotson v. State,* 88 Ala. 208; *State v. Leonard,* 3 Ore. 157; *Thompson v. State,* 19 Tex. App. 593; *State v. Meekins,.* 41 La. Ann. 543. Instruction on presumption of innocence: *Campbell v. State,* 100 Ga. 271.

RICHARDSON, JUDGE. In this case the information charged that plaintiffs in error "unlawfully, fraudulently, stealthily and feloniously did take, steal and carry away eighteen-hundred dollars, good and lawful money of the United States, the property of one Milton Ragsdale, with the unlawful and felonious intent to then and there deprive him, the said Milton Ragsdale, of the property aforesaid, and to convert the same to their own use." The evidence for the state showed that Milton Ragsdale lost a pocket book containing eighteen-hundred dollars, and that plaintiffs in error found it; that within a few hours thereafter they learned whose property it was, but nevertheless concealed the fact that they had found it, and immediately took the train to Nacogdoches, Texas, where they were shortly arrested and something over thirteen-hundred dollars of the money recovered from them. After the state had made this proof and rested, plaintiffs in error moved the court to direct a verdict of not guilty on the ground that there was a fatal variance between the allegations of the information and the proof. This motion the court overruled, and its action in so doing is assigned as error.

Snyder's Comp. Laws of Okla. defines larceny as follows:

"Sec. 2591. Larceny is the taking of personal property ac-

complished by fraud or stealth, and with intent to deprive another thereof."

"Sec. 2592. One who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use, or to the use of another person who is not entitled thereto, without hav-.ing first made such effort to find the owner and restore the prop- erty·to him as the circumstances render reasonable and just, is guilty of larceny." .

It is urged that each of these sections defines a different offense; and that upon an information drawn under section .2591, charg- ing that the defendant did take, steal and carry away certain per- sonal property of another with the intent to convert the same to his own use and to deprive such other thereof, a conviction cannot be had upon proof that the defendant found lost property under circumstances which gave him means of inquiry as to the true owner, and appropriated the same to his own use without first making an effort to find the owner and restore the property; the contention being that where such offense is intended to be charged, the information should specifically set forth the facts enumerated in· the latter.section.

With this contention we cannot agree. We think that sec- tion 2591 is *the* statutory definition of larceny, and that section 2592 only prescribes a state of facts, which ·being proved, estab- lishes the offense as defined by the previous section; that it merely enunciates one rule of evidence, a compliance with which proves the crime as previously defined. To constitute larceny, there must be a taking of personal property; it must be done by fraud or stealth, and with a larcenous intent; and these requisites are all present when the facts enumerated in section 2592 exist. The taking is shown when it is proved that the defendant found lost property and took it into his possession. If the evidence shows that he knew to whom the property belonged or that the circum- stances gave him means of inquiry as to the true owner, and he made no reasonable effort to find the owner and restore the prop- erty, but on the other hand concealed the fact that he had found

it; the taking is then deemed to have been done by stealth. And when it is further shown that under such circumstances he appropriated the property to his own use or to the use of any other person not entitled thereto, his larcenous intent is established. The Supreme Court of California has so construed these identical sections in *People v. Buelna,* 81 Cal. 135, 22 Pac. 396. The syllabus of that case is as follows:

"Section 485 of the Penal Code, declaring it larceny for one who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner to appropriate such property to his own use, etc., does not create a distinct kind of larceny, but declares a rule of evidence which, being fulfilled, constitutes the crime as defined in section 484 of the Penal Code; and it is proper to instruct the jury as to such rule of evidence under an information drawn under section 484 defining larceny in general, if the evidence tends to show an unlawful appropriation by the finder of lost property as described in section 485."

In many states where the statutes only define larceny generally as is done in section 2591, and where there appears to be no such statute as section 2592, it is nevertheless held that proof of the facts enumerated in the latter section establishes the crime as defined by the general statute. *Flemister v. State,* 121 Ga. 126, 48 S. E. 910; *State v. Weston,* 9 Conn. 527, 25 Am. Dec. 46; *People v. McGarren,* 17 Wend. 460; *Brooks v. State,* 35 Ohio St. 46. And in *State v. Boyd,* 36 Minn. 538, it is stated that this was true at common law. Minnesota, however, had a statute similar to section 2592. And in all the cases in the books involving the larceny of lost property, we have found none in which the opinion or statement of facts indicated that the indictment alleged the finding, etc., and none holding that such allegations were necessary. See cases cited above; also *United States v. Pearl,* 27 Fed. Cas., No. 16,022, 5 Cranch C. C. 392; *State v. Bolander,* 71 Iowa, 706, 29 N. W. 602; *State v. Hayes,* 98 Iowa, 619, 67 N. W. 673, 37 L. R. A. 116; *Comm. v. Titus,* 116 Mass. 42, 17 Am. Rep. 138. The motion to direct a verdict of not guilty was properly overruled.

It is next contended that the court erred in admitting in evidence a confession made by plaintiffs in error to the sheriff while en route from Texas, because the same was not voluntarily made, but was extorted by fear of punishment and prompted by hope of leniency. When proof of the confession was offered, plaintiffs in error objected to its admission on the grounds just stated. The court then caused the jury to retire, and heard all the evidence on each side bearing upon this question. Plaintiffs in error testified that the sheriff told them that it would be better for them to confess, and that if they did so, he would see to it that they got off with a term of imprisonment for a year and a day, but if they "got tangled up with a lawyer" they would likely get a term of ten or fifteen years; and they stated that it was upon the faith of this promise and under the fear of this implied threat that they made the confession. The sheriff and his attendant each testified that no such conversation nor any portion thereof occurred; that plaintiffs in error broached the subject themselves, voluntarily wrote out on a paper an itemized statement of that portion of the money which they had spent, gave the same to the sheriff, and stated that they wanted to tell him all about the matter. The sheriff then told them that he would like to know the truth in regard to it, whereupon they proceeded to relate the affair; and one of them concluded by saying, "Now, if I will replace this money of Ragsdale's, don't you think that will square it?" To which the sheriff replied, "I don't know a thing in the world about it; I have nothing to do with that." And the sheriff and his attendant each testified that no promises, inducements or threats of any kind were made. It was also shown that subsequently plaintiffs in error voluntarily made the same confession to the county attorney after the latter had first told them that they were under no obligation to make a statement, and that whatever statement they should make might be used against them. The court held the confession admissible.

Primarily there are two facts which render a confession inadmissible: first, that it was obtained under any form of com-

pulsion, so that to receive it in evidence would violate the defendant's constitutional privilege against self-incrimination; and second, that it was made under such circumstances of hope or fear as to create a fair probability of its testimonial untrustworthiness. And while the greater number of cases hold the contrary, yet we think the proper rule is that in the absence of a statute governing the matter, *prima facie* any confession is admissible in evidence; and where its admissibility is challenged by the defendant, the burden is on him to show that it was procured by such means or under such circumstances as to bring it within one or the other of the conditions stated, unless there is something in the confession itself or the other evidence on the part of the state which shows that it is inadmissible. This was so held in *Hauk v. State,* 148 Ind. 238, 46 N. E. 127, 47 N. E. 465; *State v. Grover,* 96 Me. 363, 52 Atl. 757; *Com. v. Sego,* 125 Mass. 213; *Com. v. Culver,* 126 Mass. 464; *Rufer v. State,* 25 Ohio St. 469; *State v. Meyers,* 99 Mo. 107, 12 S. W. 516; *State v. Storms,* 113 Iowa, 385, 85 N. W. 610, 86 Am. St. Rep. 380; *State v. Incebice,* 126 Iowa, 16, 101 N. W. 273; *People v. Barker,* 60 Mich 277, 27 N. W. 539, 1 Am. St. Rep. 501; *State v. Jones,* 171 Mo. 401, 71 S. W. 680, 94 Am. St. Rep. 786. And Professor Wigmore says that this is the practical and natural rule, "for if there is any reason to object to the confession, no one can know it better than the defendant." He says further: "Looking at the general principles of admissibility and the comparative rarity of untrustworthy confessions, as well as the contingent nature of the dangers supposed to flow from improper inducements, the more practical rule would be to receive confessions without question, unless they are shown to have been improperly induced,—especially since a contrary rule may involve the difficulty of proving a negative." Wigmore on Evidence, vol. I, sec. 860.

The admissibility of a confession, where it is challenged, is a question solely for the court after hearing, in the absence of the jury, all the evidence on each side respecting the manner in which the confession was obtained; and the court is necessarily vested

with a large discretion in determining the matter, a discretion, however, which should be exercised with great care to the end that the due and proper enforcement of the law on the one hand be not impeded, and that no injustice be done the defendant on the other. In the present case the court had the witnesses before him, could observe their demeanor on the stand, their general conduct and appearance, and their manner of testifying, and was in a much better position to form a just estimate of their truthfulness than are we. The evidence was conflicting; the interest of the witnesses was a proper subject for consideration, and the burden was on plaintiffs in error; and we cannot say upon this record that the court erred in admitting the evidence. After a confession has been admitted, the defendant is entitled to have the evidence in regard to the manner in which it was obtained given anew to the jury, not that the jury may pass upon its admissibility, but for the purpose of enabling them to judge what weight and value should be given to it as evidence; and upon his request the defendant is entitled to an instruction on that point. This was done in the present case.

Lastly it is urged that the court erred in giving the jury the following instruction:

"The court further instructs the jury that of the offense charged in the information and each and every material ingredient thereof the defendants are presumed to be innocent, and this presumption continues until the state shall overcome same by competent evidence, which convinces you of the guilt of the defendants beyond a reasonable doubt."

The objection is to that portion of the instruction wherein the court stated that "this presumption continues *until* the state shall overcome same by competent evidence which convinces you of the guilt of the defendants beyond a reasonable doubt," the contention being that it continues even then. There was no error in the instruction given. Sec. 6828, Snyder's Comp. L. Okla. 1909. How can the presumption continue after it has been overcome? And if it does continue even after guilt has been proved beyond a reasonable doubt, how could a conviction ever result? In many cases

the history, philosophy and theory of this presumption has been lost sight of, and the subject has been refined upon to such extent that it has become an absurdity and impossible of a practical application. The sole purpose of the law in creating this presumption is to designate the party upon whom lies at the beginning the risk of non-persuasion and upon whom rests therefore the duty of producing evidence. And the court instructs the jury in regard to the presumption for a two-fold purpose: that the jurors may be informed upon whom lies the burden of proof, and cautioned against drawing any inferences of guilt from the accusation, arraignment and present situation of the accused. But aside from the cautionary purpose of such an instruction, the presumption of innocence is merely a corollary to the rule that the burden is upon the state to prove the defendant's guilt, and that the latter may stand in security without producing any evidence until that has been done. The legal measure of proof required to effect persuasion and establish guilt, the rule respecting a reasonable doubt upon the whole case, is a different thing altogether. Wigmore on Evidence, vol. iv, sec. 2511; Thayer's Preliminary Treaties on Evidence (1898), Appendix B, p. 551; Greenleaf on Evidence, (16th Ed.) chap. 6, sec. 14w; *State v. Soper,* 148 Mo. 217, 49 S. W. 1007; *State v. Kennedy,* 154 Mo. 268, 55 S. W. 293; *People v. Ostrander,* 110 Mich. 60, 67 N. W. 1079; *State v. Quigley,* 26 R. I. 263, 58 Atl. 905; *Agnew v. United States,* 165 U. S. 36; *Waters v. State,* 117 Ala. 108, 22 So. 490; *Edwards v. State,* 69 Neb. 386; 95 N. W. 1038; *State v. Maupin,* 196 Mo. 164, 93 S. W. 379; *Bell v. State,* 140 Ala. 57, 37 So. 281; *Williams v. State,* 144 Ala. 14, 40 So. 405.

We find no error in the proceeding, and the judgment of the lower court is affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.