Guy PHILLIPS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12615.

Criminal Court of Appeals of Oklahoma.

Sept. 10, 1958.

Geo. L. Hill, McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

The plaintiff in error, Guy Phillips, hereinafter referred to as defendant, was charged in the district court of Pittsburg County, jointly with one Delbert Blevins, with the larceny of a saddle, valued at $50. A jury was waived by the parties and they were tried by the court and found guilty. The court sentenced Blevins to a term of two years in the Oklahoma State Penitentiary, sentence to be suspended upon good behavior. The record supports the suspension of such defendant. Blevins has not appealed. The defendant Phillips was sentenced by the court to two years in the Penitentiary, but the sentence was not suspended.

Defendant Phillips for reversal of his conviction, in effect argues that he was convicted on the uncorroborated testimony of accomplice Blevins, and that the judgment should, therefore, be reversed as to him.

Title 22 O.S.A. § 742, reads:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Fred Lowe, owner of the stolen saddle, testified that he was a resident of Tannahill, Pittsburg County; that he was acquainted with Delbert Blevins who had hauled hay for him in the summer of 1957, but that he did not know Guy Phillips. He said that he was the owner of two saddles, one of which was usually kept in the barn and one at the garage. That on or about August 10, 1957 he missed one of his saddles and went to the sheriff's office and made complaint to deputy Roberson. That several days later he received a call from the sheriff's office that they had his saddle, and he went down and identified the saddle and took possession of it. That the defendant Delbert Blevins was not working for him on August 10, 1957, but had quit approximately ten days before that time. That the saddle was valued at about $150. That it was a specially made saddle, given to him by a former Governor of Oklahoma.

J. D. Roberson, deputy sheriff, testified that on August 10, 1957, he received a complaint from Fred Lowe regarding a saddle that was missing from his farm; that Mr. Lowe gave him a description of the saddle and the name of Delbert Blevins, who had worked for Mr. Lowe a short

time before the saddle was missing, and whose cousin had also worked for Mr. Lowe at the same time, but whose name was not known. That he went to Blevin's home and questioned Blevins and his cousin. That Blevins told witness that he had not been in the barn and did not know anything about the saddle, but that the cousin said that he had seen the saddle. Witness further testified that the same day he learned that Blevins had in fact been in the barn and knew the saddle was there; and learned that Blevins and his cousin were fixing to leave the next day to go to the Army, and were catching a bus at the American Legion Building. That witness went to the Legion Building the next morning and the cousin caught the bus and left for the Army, but that Blevins did not show up. That witness saw a car he knew belonged to Blevins about a block from the Legion Building, and that when Blevins got in his car and left witness followed him, apprehended him and took him to jail and accused him of stealing the saddle, and that: "Blevins said that he and Phillips got the saddle", and that Blevins told him where he had sold it down in Texas. That while Mr. Stipe was taking a statement from Blevins' witness went and picked Phillips up and brought him in, and the defendants then made bond and were released from custody.

No objections were interposed to any of the testimony of witness Roberson, and he was not cross-examined.

■ Elmer Sutterfield, deputy sheriff, testified that he witnessed a statement taken from the defendant Delbert Blevins, and was present when the statement was made, and identified the statement, which was offered into evidence. The court sustained an objection from counsel that the statement was not binding on Phillips, who was not present when the statement was made, and was not shown to at any time have acquiesced in the statement. The statement was received and considered only as it applied to the defendant Blevins. This was a correct ruling. The statement was to the effect that Phillips helped steal the saddle

and accompanied Blevins to Texas in Blevins' car, cashed the $29 check that Blevins received for the saddle, and received half the proceeds.

O. A. Pruitt, sheriff of Pittsburg County, testified to having received the complaint from Fred Lowe about the loss of the saddle in question, and said that he made investigation; that after the defendant Delbert Blevins told him about getting the saddle, he took Blevins to Texas and recovered the saddle near Henderson, and returned it to the owner, Mr. Lowe, at McAlester. That the name plate was missing from the saddle and could not be found. Witness then testified, over the objection of the defendants, that the man who bought the saddle in Texas paid for it by check, and further testified, over the objection of the defendants, that he received the check in due course, and produced a check which he said was the check he received and offered it in evidence, all over the objection of the defendant. It was admitted in evidence over the objection of defendant.

Mrs. J. L. Hardin, who wrote the check, State's Exhibit 2, for the Carrollton Commission Company in amount of $29, in payment of the saddle (less a $2 commission), and payable to Jimmy Stone, was not present to identify the check. The check shows to have been cashed at the A & P Tea Company store, endorsed by Jimmy Stone, but neither the manager nor clerk of that store was present to identify the defendant Phillips as the person endorsing the check or presenting it and receiving the cash or merchandise for it.

On redirect examination and over the objection of the defendants the sheriff was asked: "Did the Phillips boy ever admit to you his participation in this? A. Yes. Q. He did? A. Yes." Counsel objected as follows: "Object to that if the court please, it is not corroborative, and it is incompetent, irrelevant and immaterial." On appeal counsel further states that no proper predicate was laid for asking the question.

The court further questioned the sheriff as follows: "What did he tell you, Mr.

Pruitt, did he tell you that he stole that saddle—helped steal it? A. Yes, sir." This was over the objection of counsel for the defendants.

From the above we see that the only evidence connecting defendant with the theft of the saddle in question came, first, from the testimony of deputy sheriff Roberson; second, from the admission of a $29 check made payable and purportedly endorsed by Jimmy Stone; and, third, testimony of Sheriff Pruitt.

Considering the vital part of deputy Roberson's testimony, where he said: "I told him (Blevins), I knew he had been storying to me about being in the barn, that he was there, and he admitted that he had been in the barn and *that he and Phillips got the saddle* and finally after I described the name plate and all on it, he told me where he sold it."

This court has said:

"Declarations of a defendant, made after the offense had been committed, in the absence of a codefendant, are admissible against himself, but inadmissible against the other defendant."

Bohannan v. State, 24 Okl.Cr. 103, 215 P. 1078. The question was objectionable as leading, and was hearsay. Rousek v. State, 93 Okl.Cr. 366, 228 P.2d 668.

Nevertheless, there is the further rule, as stated in Martin v. State, 29 Okl. Cr. 136, 232 P. 966:

"While the defendant in a criminal prosecution has the right to insist that only competent evidence shall be introduced against him, he may waive the right, and he does waive it by failing to introduce proper and timely objections."

By reason of the fact that no objections were interposed, the testimony in question was admissible. And according to deputy Roberson, Blevins confessed to him that with the aid of defendant Phillips, he stole the saddle in question.

But by reason of the provisions of the statute (22 O.S.1951 § 742), we find that the testimony of Blevins, the accomplice, must be corroborated.

To do this, the State, as we have seen, was permitted to introduce into evidence over the objection of defendant the $29 check, State's Exhibit 2, that we have described. This exhibit was inadmissible because it was not made out in the name of either defendant, but to Jimmy Stone and neither defendant was identified by the payor as being the payee, Jimmy Stone, nor did the firm cashing the check identify either defendant as the person endorsing the check and receiving value for it. So this evidence cannot be considered in corroboration.

Next, in effort to corroborate the statement by Deputy Roberson that Blevins admitted to him that he and Phillips got the saddle, Sheriff Pruitt was asked the leading question: "Did the Phillips boy ever admit to you his participation in this? A. Yes. Q. He did? A. Yes." Counsel for defendants interposed the objection: "Object to that if the court please, it is not corroborative, and it is incompetent, irrelevant and immaterial."

The question, of course, was leading and before counsel had time to object, the county attorney queried, "He did?" and the answer was "Yes". The objection was timely interposed, under the circumstances. Of course the question, as now argued by counsel, was improper, as no proper predicate was laid for asking the question. Witness should have first been asked whether or not he had a conversation with the defendant Phillips concerning the theft of the saddle, and if his answer was "yes", witness should then have been asked to fix the time and place of the conversation, and relate the conversation; as prima facie if a confession should be involved it would be admissible, unless its admissibility was challenged by the defendant. Should the admissibility be challenged by the defendant, the jury would be excused, and the burden would be on the defendant to show that the statement about to be related by witness was procured by

such means or under such circumstances as to render it inadmissible. As held in Williamson v. State, 64 Okl.Cr. 94, 77 P.2d 1193, involuntary statements or confessions are ones that are extracted by any threats of violence, or obtained by direct or implied promises, or by the exertion of improper influence. If the court should determine that the statement was freely and voluntarily made without threats or promises, the jury would be recalled and the witness would be permitted to relate the conversation. See Berry v. State, 4 Okl. Cr. 202, 111 P. 676, 31 L.R.A.,N.S., 849; Guthery v. State, 24 Okl.Cr. 183, 216 P. 948; Mays v. State, 19 Okl.Cr. 102, 197 P. 1064; Pressley v. State, 71 Okl.Cr. 436, 112 P.2d 809.

Following the leading question by the county attorney, the court asked witness Pruitt: "What did he tell you, Mr. Pruitt, did he tell you that he stole that saddle—helped steal it? A. Yes, sir. Mr. Hill: Ojected to. The Court: Overruled. Mr. Hill: Exceptions."

■ What we have said as to the impropriety of the form of the question by the county attorney is applicable to the question interposed by the court.

With this evidence eliminated, there is no evidence to corroborate the testimony of the accomplice Blevins.

From the record it may be that the statements made by defendant Phillips to Sheriff Pruitt would be sufficient to corroborate the testimony of the accomplice. We do not know, but the county attorney can determine this in the light of what he have said, and whether evidence of the payor of the check or of the person cashing it may be obtained, or evidence of any person who may have knowledge of defendant's participation in the theft charged.

The conviction of defendant Phillips is reversed, and he is granted a new trial.

BRETT, P. J., concurs.

NIX, J., not participating.