Gerald L. BREWER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13610.

Court of Criminal Appeals of Oklahoma.

May 18, 1966.

Holmes H. Colbert, Sulphur, for plaintiff in error.

Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Plaintiff in Error, Gerald L. Brewer, hereinafter referred to as defendant, was charged in the District Court of Murray County with the crime of Murder. He was tried by a jury, and convicted of the in-

cluded offense of Manslaughter First Degree, and sentenced to 17 years in the penitentiary. From that judgment and sentence he has appealed to this Court asserting numerous assignments of error.

The Court only deems it advisable to discuss two of the contentions of error. They deal principally with the admission of incompetent testimony and the admission of a tape recording purported to be a confession.

A brief review of the testimony will show that the defendant was charged with effecting the death of his wife by firing two bullets from a .22 caliber pistol into her chest. Defendant and his wife had been having some domestic difficulties, and were at the time, separated. He had gone to their home, at her request, to discuss a reconciliation. According to the testimony of defendant, he went out to his car to get a bottle of whiskey and also brought the pistol in with him. He laid it on the table and some discussion ensued about him selling the gun to pay on delinquent bills. His wife stated that her uncle might be interested in buying the gun. During the conversation, she reached for the pistol at the same time as defendant. He stated that she caught defendant by the arm or wrist in which he had the gun, and it accidentally discharged, and his wife received two bullets in the chest, which were fatal. Defendant claims that he didn't exactly know how the gun was fired; that he had no intention of shooting his wife; that he loved her; and her grabbing his arm must have discharged the pistol. There was no other living witness.

Defendant immediately called for the sheriff, and an ambulance, which arrived shortly and took the body to the hospital where she was pronounced dead. Defendant was arrested and taken into custody shortly thereafter and then to the county attorney's office, where he was interrogated. The entire interrogation was recorded on a tape recorder, and its introduction into the evidence of the case constitutes one of defendant's contentions of error.

The record, at pg. 67, shows that the chief of police testified that he interviewed the defendant at the courthouse within an hour and fifteen minutes after the shooting, and that the tape recording was made at that time. The state sought to introduce the recording into evidence, and defense counsel objected, stating:

"BY MR. HOLMES H. COLBERT: We object to anything about any kind of recording in connection with this defendant made at any time or attempted to be introduced at any time; and at least they might let the defendant listen to it first, before the jury or anybody else is permitted to hear it.

BY THE COURT: Yes, that should be done, but we'll take the noon recess now. The jury will be taken to lunch * * *"

(With the Judge, all officers of the Court, the jury and the defendant having reassembled in open Court for the afternoon session of this trial on said date, the Court inquired):

"BY THE COURT: Are all parties ready to proceed?"

The county attorney and the defendant stated that they were, and the questioning of Police Chief Charles J. McBee continued. Again, the county attorney sought to introduce the recording, and again, defense counsel objected. The trial court overruled same, and permitted the recording to be played in its entirety to the jury.

The record is silent as to whether the recording was played in chambers for the judge during the noon recess. Defense counsel stated later that he had heard the recording; but that is all that appears in the casemade regarding this important point.

This Court is of the opinion that the interrogation of defendant by the county attorney, the Chief of Police of Sulphur, the Sheriff of Murray County, and by the coroner, Dr. Jack Donald, is not a confession. It is more in the nature of an exculpatory statement, and admission.

■ A confession, as the term is used in criminal law, is an admission, declaration, or acknowledgment made by one who has committed a felony or a misdemeanor that he committed the crime or participated in its commission. In most cases, a confession is defined as a voluntary admission or declaration made to another of one's participation in a crime.

■ To give a statement the binding force of a confession, its distinctive feature must be an acknowledgment of guilt without any exculpating statement or explanation.

■ Although, if the prosecution undertakes to introduce a statement of the accused as his confession, any exculpating statements which he made at the time are admissible in his favor.

■ A confession is an admission of the criminal act itself, not an admission a fact or circumstance from which guilt may be inferred.

■ The California courts stated in the case of People v. Chan Chaun, 41 Cal. App.2d 586, 107 P.2d 455:

"An 'admission' is something less than a confession and is but an acknowledgment of some fact or circumstance which in itself is insufficient to authorize conviction and which tends only toward the proof of the ultimate fact of guilt; whereas a 'confession' leaves nothing to be determined in that it declares defendant's intentional participation in a criminal act, and it must be a statement of such nature that no other inference than that of guilt may be drawn therefrom."

Even if some of the admissions of defendant on the tape recording would have been admissible, not as a confession, but as admissions, the rule for admissibility would have been the same. For, although there has been some minor criticism of the use of recordings in evidence, it is now almost universally held that sound recordings, *if relating to otherwise competent evidence,* are admissible providing a proper foundation is laid for their admission.

■ The cases are in general agreement as to what constitutes a proper foundation for the admission of a sound recording. They also indicate a reasonably strict adherence to the rules prescribed for testing the admissibility of recordings, which have been outlined as follows: (1) A showing that the recording device was capable of taking testimony, (2) A showing that the operator of the device was competent, (3) Establishment of the authenticity and correctness of the recording, (4) A showing that changes, additions, or deletions have not been made, (5) A showing of the manner of the preservation of the recording, (6) Identification of the speakers, and (7) A showing that the testimony elicited was voluntarily made without any kind of inducement.

■ The further procedure, as outlined by this Court in Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989, stated:

"Where the question arises as to whether a confession is voluntary or involuntary, the correct procedure is for the court to immediately withdraw the jury, and hear all of the evidence both for and against the competency of the same, and all the facts and circumstances under which the same was made, and decide whether the confession was voluntary or involuntary. If voluntary, it may be presented, together with all the facts and circumstances surrounding the giving of the same, to the jury. If involuntary, it is inadmissible."

When the counsel for defense objected to the introduction of the tape recording, the better practice would have been for the judge to withdraw the jury; listen to the arguments of counsel; hear the tape recording; and determine if all of the recording is admissible and should be heard by the jury. If not, it should have been excluded.

In the instant case, we do not know if this procedure was followed, as the record is silent.

Even if the judge had ruled it admissible, or parts of it admissible, it should have

then been presented to the jury for whatever weight and credibility they would give it, under proper instruction. See, Williams v. State, supra.

■ The next proposition we will consider is the introduction of deceased's bloody clothing into evidence over objection of defendant.

Dr. Jack W. Donald, medical examiner for Murray County, testified that he was called to the hospital and when he arrived, Wanda Brewer was already deceased as a result of gunshot wounds. That he examined her body and from this examination determined the cause of her death as follows:

"A. Two gunshot wounds in the front of the chest, which pierced the heart and the entire chest.

Q. You say she had 2 gunshot wounds; just where were they?

A. In the middle line of the front chest, directly over the heart. They were about 3–4 inches apart, one above the other. Both bullets pierced the entire chest. Both bullets went almost entirely through her body and lodged on the right side of the back of the chest, next to the skin.

Q. Were they both fired from the same position?

A. I would say they were.

Q. Were there any powder burns on the wounds or on her clothing?

A. There were no powder burns on the body. I examined carefully for that.

And, further:

Q. And you say there were no powder burns on the clothing or body of Wanda Brewer, when you examined her body at the Arbuckle Memorial Hospital, on April 2, 1964?

A. There were no powder burns. I checked that at the time very carefully."

The state introduced the closing into evidence over the objections of defendant, allegedly for the purpose of showing the jury that there were no powder burns on the clothing.

After reading the testimony of the Doctor regarding the nature, location, and course of the wounds, this Court is of the opinion that the introduction of this bloody clothing was error.

■ Such evidence is admissible, within the discretion of the trial court, to connect the accused with the crime, to prove the identity of the deceased, to show the nature of the wound, or to throw any relevant light on a material matter at issue. However, in the case at bar, the testimony of the doctor described the wound, eliminated any powder burns, and there was no question of identity. Moreover, this Court cannot see that there was any material matter at issue; nor how the exhibition of the clothing before the jury could have tended to connect accused with the crime, as his connection was not at issue— only whether the shooting was accidental.

Under these circumstances, the only effect of the bloody clothing was to inflame the jury and prejudice the defendant.

In the case of Martin v. State (1939), 67 Okl.Cr. 390, 94 P.2d 270, this rule was established:

"It is permissible to introduce the bloody clothing when their introduction serves to illustrate some point or solve some question or throw light upon some matter connected with the proper solution of the case. Under the facts in this case the clothing should not have been admitted in evidence, as there was no doubt as to the location of the wounds, and no issue they would tend to throw light on."

See, also, the annotation in 68 A.L.R.2d, pg. 903.

In a re-trial of this case the bloody clothing worn by the deceased should not be permitted to be introduced. They could only have the effect of causing passion and prej-

udice in the minds of the jury, since the testimony of Dr. Donald is sufficient to uphold the state's theory on the powder burns.

The last proposition of error that we will discuss is that hearsay testimony was allowed to be introduced over the objection of defendant, thereby prejudicing him in the eyes of the jury. During the presentation of the evidence of the state, they introduced testimony of Mary Dilbeck, cm. 97–100; Alma Walker, cm. 120–122; and Coleen Runyan, cm. 124–127; all of whom testified regarding their marital difficulties.

 All of this testimony was hearsay, and highly prejudicial. Most damaging was the testimony of Coleen Runyan, the deceased's sister, wherein she stated that Wanda had told her that she was not going to let Gerald come back home, and that he told her if she ran him off, he would kill her. All of this was not in the presence of defendant, and therefore, hearsay. In the case of Maiden v. State, Okl.Cr., 273 P.2d 774, this Court stated that reception of hearsay evidence over objection is error, and whether reversible error depends on all the facts and circumstances of the case and the prejudicial effect such reception may have had on the jury.

 There are exceptions to the rule on hearsay testimony, where the defense seeks to prove a motive or intent. But they should be closely related to the crime itself, and in the instant case, it is doubtful if these questions could have been asked under this exception to the rule. In any event, when testimony of this kind is permitted to go to the jury, the trial court should so limit it by instruction. See Tapedo v. State, 34 Okl.Cr. 165, 245 P. 897:

"In a homicide case, evidence of the relation of the parties, ill treatment, previous assaults, and difficulties, where not too remote, are admissible as tending to establish motive, intent, and state of mind of the parties. Such evidence is not to be excluded although it may tend to prove some other offense, But in such case the court should by proper instruction restrict such evidence to the purpose for which it is admitted."

And, Lowrey v. State, 87 Okl.Cr. 313, 197 P.2d 637:

"In prosecution for wife murder, declarations of deceased showing her state of mind toward defendant are admissible, but the scope of such evidence should be limited to such purpose and not used as proof of the facts stated."

The fact that the witness was deceased's sister and obviously biased, would naturally prejudice her testimony against the defendant; and go to effect her credibility as a witness.

This Court has no alternative but to reverse and remand this case back to the trial court for a new trial, and it is so ordered.

BRETT, J., concurs.

BUSSEY, P. J., not participating.