2000 OK CR 27

**Patti Denise PARENT, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No.  F–99–1621.

Court of Criminal Appeals of Oklahoma.

Dec. 19, 2000.

Stuart Southerland, Tulsa, OK, Counsel for Appellant at trial.

James Dunn, Assistant District Attorney, Tulsa, OK, Counsel for the State at trial.

S. Gail Gunning, Norman, OK, Counsel for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Sandra D. Howard, Assistant Attorney General, Oklahoma City, OK, Counsel for the State on appeal.

### OPINION

LUMPKIN, Vice–Presiding Judge:

¶ 1 Appellant, Patti Denise Parent, was tried by jury in the District Court of Tulsa County, Case No. CF–98–2208, and convicted of Taking a Credit Card, after former convic-

tion of two or more felonies, in violation of 21 O.S.1991, § 1550.22.[1] The jury set punishment at twenty (20) years imprisonment. The trial judge sentenced Appellant accordingly and gave Appellant credit for time served. Appellant now appeals her conviction.

¶ 2 Appellant came to Elizabeth Walker's Tulsa home on February 24, 1998, to conduct a physical exam for an insurance policy. Mrs. Walker had never met Appellant. After introducing herself, Appellant and Mrs. Walker sat down at the kitchen table. Appellant requested Mrs. Walker's driver's license for the purpose of identifying Mrs. Walker as the would-be insured. Mrs. Walker took her driver's license from a bag inside her purse. The driver's license was kept with Mrs. Walker's eight or so credit cards, wrapped in a rubber band.

¶ 3 After viewing the driver's license, Appellant requested Mrs. Walker to provide a urine sample. Mrs. Walker went to the restroom, leaving the bag with her credit cards on the kitchen table. After about a minute to a minute and a half, she returned to find Appellant "messing" in Appellant's own billfold. When Appellant realized Mrs. Walker was returning, Appellant jammed her own billfold back into her purse. Mrs. Walker thought this was strange. She could not figure out why Appellant would be looking through her own billfold while in Mrs. Walker's home. Although this sent up a "red flag," Appellant immediately began talking about the physical, and Mrs. Walker "blew off" her concerns.

¶ 4 Mrs. Walker's husband arrived at the home, and Appellant conducted physicals on both of them. The exam lasted three hours.

¶ 5 A month later, on March 27th or 28th of 1998, Mrs. Walker received a bill for one of her credit cards, a Visa Providian she used strictly for her business approximately once or twice a month.[2] Mrs. Walker checked her

---

1. Appellant was also charged in Count II with the crime of Unlawful Use of a Credit Card, after former conviction of two or more felonies, in violation of 21 O.S.1991, § 1550.29. Appellant was bound over on both charges following a preliminary hearing. However, the State dismissed Count II prior to trial.

2. Apparently, the bill also included a letter from the credit card company informing Ms. Walker that she needed to replace her credit card because the magnetic part was coming off. Ms. Walker thought this was strange because she had not used the card in a while.

purse and found her Visa Providian credit card was missing. Mrs. Walker had not given anyone permission to use the card.[3]

¶ 6 Mrs. Walker reported the matter to the credit card company and had her credit card canceled. She subsequently made a report to the police regarding the matter. Mrs. Walker's daughter was living with her at the home and had friends come over from time to time. Mrs. Walker admitted it was possible that she could have left the card at the last place she used it.

¶ 7 Detective Bob Little of the Tulsa Police Department's Fraud Investigation Unit was assigned Mrs. Walker's credit card case and, based upon reports provided to him, began investigating Appellant.[4] He made arrangements to speak to Appellant at her place of employment, World Wide Health Services, on April 14, 1998. Little told Appellant's manager he had a case he was investigating and wished to speak to Appellant. The manager provided an office for the interview.

¶ 8 When Appellant entered, Little advised her she was not under arrest and she was free to leave at any time. He also advised her he was investigating the theft of Mrs. Walker's credit card and that Appellant had been listed as a suspect. He also told Appellant his investigative report would go to the District Attorney's office when completed and would indicate whether or not Appellant had been cooperative. No one else was present during the interview. Appellant agreed to speak with Little. The entire interview lasted fifteen to twenty minutes.

¶ 9 Appellant initially denied taking Mrs. Walker's credit card. However, after Little told her he "knew" she had stolen it, Appellant "stated that she had a problem with stealing and that she had taken Mrs. Walker's credit card without her knowledge or permission." (Tr. at 142.)[5] Appellant also told Little she had thrown the card away. Little convinced Appellant to write a statement about stealing the card "in order to prove that it was their own statement in their own words as to what had occurred." Little also asked if he could search Appellant's car and purse. Appellant agreed, but the credit card was not recovered during the search.

¶ 10 Appellant's written and signed statement, given on April 14, 1998, states as follows, in its entirety:

> *To whom it may concern I do have a propblem (sic) with stealing I have in the past had counsealing (sic). It looks like I need more for the help. Regarding Ms L. Walker I apparently stoled (sic) her card,* I do not remember what I have used it all on various place which was told by the detective.
>
> I did not have permission to use credit card. I used it at consignment furniture, some places I do not remember, but all as listed on form that the detective has.

The italicized portion above reflects the redacted version that was eventually admitted at trial.

¶ 11 In her first proposition of error, Appellant claims she was prejudiced by the prosecutor's improper comments on her failure to testify at trial. We find, however, the prosecutor's statements, standing alone, were not prejudicially improper comments regarding Appellant's failure to testify. *Mehdipour*

---

3. According to the preliminary hearing testimony, approximately fifty charges were made on the card.

4. During the preliminary hearing, it was revealed that Mrs. Walker's own investigation led her to believe Appellant had stolen the card. Mrs. Walker checked her day-timer against purchases made on her card and found they began in the days after the home visit by Appellant. Mrs. Walker recalled the purse incident and Appellant's name. She located Appellant's address and the address of her job and found that purchases made with the card were in the vicinity of both. None of this was addressed at trial, however.

5. Little denied threatening Appellant or promising her that charges would not be filed against her if she wrote a statement. He did not recall whether or not he had told Appellant that he had her on video tape using the credit card. He appears to have used such methods before. (Tr. at 150–51; Pr.H.Tr. at 27.) Little denied there was any particular police protocol as to appropriate measures to use when interviewing people. He indicated he was "pretty much" free to do as he sees fit in any particular circumstance. (Tr. at 146.)

*v. State*, 1998 OK CR 23, ¶ 12, 956 P.2d 911, 916; *Romano v. State*, 1995 OK CR 74, ¶ 56, 909 P.2d 92; *Simpson v. State*, 1994 OK CR 40, ¶ 11, 876 P.2d 690, 693. We recognize these same comments relate somewhat to the errors that necessitate reversal in proposition two.

¶ 12 In her second proposition, Appellant claims her constitutional right to present a defense was violated by the trial court's improper exclusion of evidence that Appellant did not use the stolen credit card. As set forth below, we find this proposition has merit. Appellant was denied the ability to present a valid defense to the crime of taking a credit card when the trial court: (1) excluded several witnesses [6], who would have shown Appellant was not in possession of the card shortly after the alleged taking, on the basis that the witnesses were only relevant to the crime of using the stolen credit card (voluntarily dismissed by the State), rather than to the crime of taking a credit card; and (2) admitted a redacted version of Appellant's confession that omitted language showing Appellant had confessed to crimes she likely did not commit.

¶ 13 In addition to Appellant's written (and partially redacted) confession, the State presented circumstantial evidence that Appellant, a Caucasian, stole Mrs. Walker's credit card on the night of February 24, 1998. According to the defense counsel's offer of proof, the excluded evidence would have shown: (1) the credit card was in the possession of an African American woman less than three days later, i.e., February 27, 1998 at 3:15 p.m.; (2) Detective Little was told by Ron Keller of Consignment Furniture that the woman who used the stolen credit card was African American, but Little did not include this in his report; (3) Little showed Keller an all white photo line-up; (4) Little was somewhat forceful in his dealings with

Keller; and (5) Appellant's confession contained a misstatement about her using the credit card at Consignment Furniture on a certain date, when the excluded evidence would have shown she did not.

¶ 14 The crime of taking a credit card is set forth in 21 O.S.1991, § 1550.22 and includes the following language: "A person who has in his possession or under his control any credit card or debit card obtained under subsection (b) of this section is presumed to have violated this section." This provision underscores the importance of possession in proving the charged crime. Furthermore, our jury instructions define "taking" as the "exercise of complete control." *See* OUJI–CR 2d 5–106.

¶ 15 Here, Appellant was not allowed to show someone other than Appellant was exercising complete control over the card less than three days after it was stolen. This is relevant evidence and not particularly confusing.

¶ 16 The jury was properly instructed with both OUJI–CR 2d 9–12 and 9–13. These instructions outline the jury's role in deciding whether or not a statement or confession was voluntary. Under these instructions, jurors cannot even consider a statement or confession until they have determined beyond a reasonable doubt it was voluntarily given. In so doing, jurors are instructed to consider the defendant's mental condition and treatment at the time of the interrogation, including whether or not there was force used in obtaining it.

¶ 17 Of course, the trial court has the primary responsibility for looking at the voluntary or involuntary nature of a statement or confession for purposes of assessing its admissibility. Thus, the long-standing practice in Oklahoma [7] is that when a defen-

---

6. Allegedly, one of these witnesses would have testified regarding "somewhat coercive" tactics used by the arresting police officer in obtaining evidence against Appellant.

7. *See e.g., Fontenot v. State*, 1994 OK CR 42, ¶ 30, 881 P.2d 69, 72; *Mansel v. State*, 1991 OK CR 12, ¶ 10, 805 P.2d 677, 679; *Hopper v. State*, 1987 OK CR 78, ¶ 5–7, 736 P.2d 538, 539–40; *Yelloweagle v. State* 1976 OK CR 145, ¶ 5, 551

P.2d 1130, 1132; *Holt v. State*, 1973 OK CR 38, ¶ 19, 506 P.2d 561, 567; *Tice v. State*, 1970 OK CR 144, ¶ 14, 478 P.2d 916, 920; *Davis v. State*, 1968 OK CR 23, ¶ 3, 437 P.2d 271, 272; *Brewer v. State*, 1966 OK CR 58, ¶ 14, 414 P.2d 559, 563; *Hendrickson v. State*, 93 Okla.Cr. 379, 229 P.2d 196, 199–200 (1951); *Williams v. State*, 93 Okl. Cr. 260, 226 P.2d 989 (1951); *Berry v. State*, 4 Okla.Cr. 202, 111 P. 676, 679 (1910); *Kirk v.*

dant files a motion to suppress his statement or confession, the trial judge initially determines the voluntary nature of that statement for purpose of admissibility in a *Jackson v. Denno* hearing.[8] If the judge finds the statement voluntary and thus admissible, the jury is also given the opportunity to look at the issue of whether the statement was given voluntarily or involuntarily.

¶18 This procedure has been a part of Oklahoma jurisprudence since prior to statehood. Due to the uniqueness of this procedure, a restatement of its historical foundation is warranted.

¶19 In *Kirk v. Territory*, 10 Okla. 46, 60 P. 797, 807 (Okla.Terr.1900), the Supreme Court of the Territory stated:

It is a well-settled rule of law that the question of the competency of confessions is one for the court, and should be determined preliminary to allowing the confession to go to the jury. The authorities are not harmonious upon the practice. We think the correct practice, and the one sustained by sound reason and weight of authority, is that when testimony is offered to prove a confession, and objection is made to the competency of the evidence, the court should withdraw the jury, and hear all the evidence offered on the objection, both for and against the competency, and decide the question in the absence of the jury. If the court holds the confessions are not proper to be shown, then no prejudice can result from such action. On the other hand, if the court holds the confessions admissible, then the jury should be recalled; and, *if the defendant desires, all the evidence relating to the competency of such confessions, the circumstances under which they were given, the condition of*

*mind of the defendant, and all other facts affecting or tending to affect the weight or credit of such confessions, should be permitted to go to the jury.*

(emphasis added.) This same practice continued after statehood. In *Berry v. State*, 4 Okla.Cr. 202, 111 P. 676, 679 (1910) the Court cited to *Kirk* in holding:

After a confession has been admitted, the defendant is entitled to have the evidence in regard to the manner in which it was obtained given anew to the jury, not that the jury may pass upon its admissibility, but for the purpose of enabling them to judge what weight and value should be given to it as evidence; and upon his request the defendant is entitled to an instruction on that point.

*See also Hendrickson v. State*, 93 Okla.Cr. 379, 229 P.2d 196, 199–200 (1951); *Lyons v. State*, 77 Okla.Cr. 197, 138 P.2d 142, 163–64 (1943).[9]

¶20 Following *Jackson v. Denno*, Oklahoma continued with the same practice. In *Davis v. State*, 1968 OK CR 23, ¶3, 437 P.2d 271, 272, the Court stated: "If, on the other hand, the trial judge finds that the confession was voluntary, then he must admit it for the jury's consideration and it then becomes the duty of the jury, if the evidence is conflicting, to determine the voluntary nature of the confession." Furthermore, *Brewer v. State*, 1966 OK CR 58, ¶14, 414 P.2d 559, 563, quoting from *Williams v. State*, 93 Okl.Cr. 260, 226 P.2d 989 (1951), set forth Oklahoma's rule as follows:

Where the question arises as to whether a confession is voluntary or involuntary, the correct procedure is for the court to immediately withdraw the jury, and hear all of the evidence both for and against the com-

*Territory*, 10 Okla. 46, 60 P. 797, 807 (Okla. Terr.1900).

8. *Jackson v. Denno*, 378 U.S. 368, 377–77, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

9. The United States Supreme Court granted certiorari and later affirmed *Lyons*. 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944). In so doing, the Court stated: "The question of how specific an instruction in a state court must be upon the involuntary character of a confession is, as a matter of procedure or practice, solely for

the courts of the state. When the state-approved instruction fairly raises the question of whether or not the challenged confession was voluntary, as this instruction did, the requirements of due process, under the Fourteenth Amendment, are satisfied and this Court will not require a modification of local practice to meet views that it might have as to the advantages of concreteness." 322 U.S. at 601, 64 S.Ct. at 1212. *Lyons* was later overruled, in part, in *Hopper*, 1987 OK CR 78, ¶7, 736 P.2d at 540, because *Lyons* was decided prior to the Supreme Court's decision in *Jackson v. Denno*.

petency of the same, and all the facts and circumstances under which the same was made, and decide whether the confession was voluntary or involuntary. If voluntary, it may be presented, together with all the facts and circumstances surrounding the giving of the same, to the jury. If involuntary, it is inadmissible.

The Court in *Brewer* then indicated, "Even if the judge had ruled it admissible, or parts of it admissible, it should have then been presented to the jury for whatever weight and credibility they would give it, under proper instruction." *Brewer*, 1966 OK CR 58, ¶ 16, 414 P.2d at 563.

¶ 21 *Brewer* and *Davis* are thus consistent with the pre-*Jackson v. Denno* practice. *Brewer*'s holding was later readopted in *Tice v. State*, 1970 OK CR 144, ¶ 14, 478 P.2d 916, 920. *Tice* is one of several post-*Jackson v. Denno* cases that indicate Oklahoma's practice is to follow the so-called "Massachusetts rule." *Tice* explained the Massachusetts rule with the following quote from footnote eight of *Jackson v. Denno:*

In jurisdictions following this rule, the judge hears the confession evidence, himself resolves evidentiary conflicts and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. It is only the latter confessions that are heard by the jury, which may then, under this procedure, disagree with the judge, find the confession involuntary and ignore it . . . Once the confession is properly found to be voluntary by the judge, reconsideration of this issue by the jury does not, of course, improperly affect the jury's determination of the credibility or probativeness of the confession or its ultimate determination of guilt or innocence.

*See also Mansel v. State*, 1991 OK CR 12, ¶ 10, 805 P.2d 677, 679; *Yelloweagle v. State* 1976 OK CR 145, ¶ 5, 551 P.2d 1130, 1132; *Holt v. State*, 506 P.2d 561, 567 (citing *Davis* with approval for the position that, once a judge has found a confession voluntary, "he must admit it for the jury's consideration and it then becomes the duty of the jury, if the evidence is conflicting, to determine the voluntary nature of the confession.")

¶ 22 The underlying purpose for allowing the jury to hear evidence relating to the voluntary or involuntary nature of the statement or confession, however, is *not* so that the jury can determine its admissibility, but so the jury can determine what weight to give the statement. In that respect, our jury instructions, given upon request by the defendant, tell jurors, after finding the statement voluntary beyond a reasonable doubt (and sufficiently corroborated), to give the statement "whatever weight you feel it deserves." (If the statement is not found to be voluntary beyond a reasonable doubt, it is to be ignored.)

¶ 23 In a related issue, in *Williams v. State*, 1975 OK CR 171, ¶ 37, 542 P.2d 554, 573, *vacated on other grounds*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976), this Court stated that when a confession is admissible, the whole of what the accused said upon the subject at the time of making the confession is admissible and should be taken together; if the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time which bears upon the subject of controversy, including any exculpatory or self-serving declarations connected therewith. *See also Fowler v. State*, 1989 OK CR 52, ¶ 16, 779 P.2d 580, 583–84; *but see Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (discussing additional limitations relating to the admission of confessions that implicate a non-testifying co-defendant in a joint trial).

¶ 24 Here, while the jury was informed Appellant had admitted she had "apparently" stolen the card, they were prevented from hearing Appellant had, in the same statement, confessed to using the card at Consignment Furniture, a confession that, it would appear, proved to be untrue. Her misstatement is relevant to the issue of volition, accuracy of the statement, and, indeed, to her state of mind. The jury should have been allowed to consider all the circumstances of the confession, including why Appellant confessed to something she did not do. Certainly, her misstatement entitled the statement to less weight, but this portion was redacted and never presented to the jury.

¶ 25 A very similar issue was presented to the United States Supreme Court in *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). There, like the instant case, a Kentucky trial judge ruled a defendant's confession voluntary and thus overruled a defendant's motion to suppress. At trial, the defendant attempted to introduce testimony regarding the length of the interrogation and the coercive manner in which it was conducted. The prosecutor moved in limine to exclude testimony relating to the circumstances under which the confession was obtained on the basis that the issue had already been resolved by the trial judge in his ruling on admissibility of the confession. Defense counsel urged he was not attempting to relitigate the issue of voluntariness, but was seeking to cast doubt on the confession's validity and credibility. The trial judge made an ambiguous ruling which denied defense counsel the opportunity to develop evidence regarding the duration of the interrogation or the individuals in attendance. (Unlike the instant case, the trial court did, however, allow the defense to inquire about inconsistencies within the confession itself.)

¶ 26 A unanimous Supreme Court condemned the Kentucky court's ruling and reversed the case. The Court stated:

> The holding below rests on the apparent assumption that evidence bearing on the voluntariness of a confession and evidence bearing on its credibility fall in conceptually distinct and mutually exclusive categories. Once a confession has been found voluntary, the Supreme Court of Kentucky believed, the evidence that supported that finding may not be presented to the jury for any other purpose. This analysis finds no support in our cases, is premised on a misconception about the role of confessions in a criminal trial, and, under the circumstances of this case, contributed to an evidentiary ruling that deprived petitioner of his fundamental constitutional right to a fair opportunity to present a defense.

*Id.* The Court also discussed the issue in light of its holdings in *Jackson v. Denno* and *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972):

> The decisions in both *Jackson* and *Lego*, while not framed in the language of constitutional command, reflect the commonsense understanding that the circumstances surrounding the taking of a confession can be highly relevant to two separate inquiries, one legal and one factual. The manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness, a question most, but not all, States assign to the trial judge alone to resolve. *See Jackson v. Denno, supra,* 378 U.S. at 378, 84 S.Ct. at 1781. But the physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue of the defendant's guilt or innocence. Confessions, even those that have been found to be voluntary, are not conclusive of guilt. And, as with any other part of the prosecutor's case, a confession may be shown to be "insufficiently corroborated or otherwise . . . unworthy of belief." *Lego v. Twomey, supra,* 404 U.S., at 485–486, 92 S.Ct., at 624–625. Indeed, stripped of the power to describe to the jury the circumstances that prompted his confession, the defendant is effectively disabled from answering the one question every rational juror needs answered: If the defendant is innocent, why did he previously admit his guilt? Accordingly, regardless of whether the defendant marshaled the same evidence earlier in support of an unsuccessful motion to suppress, and entirely independent of any question of voluntariness, a defendant's case may stand or fall on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility.

*Crane v. Kentucky*, 476 U.S. at 688–89, 106 S.Ct. at 2145–46. The Court ruled:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment (citation omitted) or in the Compulsory Process or Confrontation clauses of the Sixth Amendment (citations omitted), the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528,

2532, 81 L.Ed.2d 413; *cf. Strickland v. Washington,* 466 U.S. 668, 684–685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment"). We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. (citations omitted) That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 2045, 80 L.Ed.2d 657 (1984). *Crane v. Kentucky,* 476 U.S. at 690–91, 106 S.Ct. at 2146–47. The Court held the Kentucky courts erred in foreclosing the defendant's efforts to introduce testimony about the environment in which the police secured his confession, stating: "We ... think it plain that introducing evidence of the physical circumstances that yielded the confession was all but indispensable to any chance of its succeeding." *Id.,* 476 U.S. at 691, 106 S.Ct. at 2147. In so ruling, the Court recognized that harmless error analysis would apply.

¶ 27 We thus find the trial court erred in this case by: admitting a redacted confession that omitted portions affecting the statement's weight and credibility; and excluding witnesses who would have allegedly shown someone other than Appellant was in possession of the stolen credit card shortly after the crime, including one witness who would have allegedly testified regarding "somewhat coercive" tactics used by the arresting police officer in obtaining evidence against Appellant. Because this case contains constitutional error similar to that in *Crane v. Kentucky,* we must ask whether the error was harmless beyond a reasonable doubt, i .e., "whether there is a reasonable possibility that the evidence complained of

might have contributed to the conviction." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967).

¶ 28 Here, there is a reasonable possibility the redacted confession contributed to the conviction. The jurors knew Appellant confessed, but they were not made aware a significant portion of that confession proved to be untrue or that another person was found to be in possession of the card shortly after it was allegedly stolen. Without Appellant's confession, we are left only with circumstantial evidence of the taking, a long gap in time before discovery of the crime, a window of opportunity for someone other than Appellant to have stolen the card, and a victim who admitted it was possible she could have left the card at the last place she used it. We cannot, therefore, say the errors were harmless beyond a reasonable doubt.

### DECISION

¶ 29 Appellant's conviction and sentence are hereby **REVERSED** and **REMANDED** to the District Court of Tulsa County for a new trial consistent with this Opinion.

STRUBHAR, P.J., JOHNSON, CHAPEL and LILE, JJ., concur.